RAILROAD COMPANY *v.* FORT.

F., a boy of tender years, had been engaged, by a company owning it, in a machine shop, as a workman or helper under the superintendence of C., and required to obey his orders. After being employed for a few months chiefly in receiving and putting away mouldings as they came from a moulding-machine, the boy, by the order of C., ascended a ladder to a great height from the floor, among rapidly revolving and dangerous machinery, for the purpose of adjusting a belt by which a portion of the machinery was moved, and while engaged in the endeavor to execute the order had his arm torn from his body. The jury, by a special ver-

dict, found that the order was not within the scope of the boy's duty and employment, but was within that of C.; that the order was not a reasonable one; that its execution was attended with hazard to life or limb, and that a prudent man would not have ordered the boy to execute it. *Held*, that the company was liable in damages for the injuries, and that the rule that the master is not liable to one of his servants for injuries resulting from the carelessness of another, when both are engaged in a common service, although the injured person was under the control and direction of the servant who caused the injury,—whether a true rule or not,—had no application to the case.

ERROR to the Circuit Court for the District of Nebraska.

Fort brought a suit in the court below to recover damages for an injury to his son, aged sixteen years, resulting in the loss of an arm, while in the employment of the Union Pacific Railroad Company. The boy was employed in the machine shop of the company as a workman or helper, under the superintendence and control of one Collett, and had been chiefly engaged in receiving and putting away mouldings as they came from a moulding machine. After the service had been continued for a few months the boy, by the order of Collett, ascended a ladder, resting on a shaft, to a great height from the floor, among dangerous machinery, revolving at the rate of 175 to 200 revolutions per minute, for the purpose of adjusting a belt by which a portion of the machinery was moved, and which had got out of place. While engaged in the endeavor to execute the order his arm was caught in the rapidly revolving machinery and torn from his body. The jury, by a special verdict, found that he had been engaged to serve under Collett as a workman or helper, and was required to obey his orders; that the order by Collett to the boy (in carrying out which he lost his arm) was not within the scope of his duty and employment, but was within that of Collett's; that the order was not a reasonable one; that its execution was attended with hazard to life or limb, and that a prudent man would not have ordered the boy to execute it.

The circuit judge (DILLON, J.), in charging the jury, after conceding, in accordance with requests of the railroad company, that it was a rule settled, at least by precedent, that

a master is not liable to one of his servants for injuries resulting from the carelessness of a fellow-servant, said:

" In deciding this case you should determine the nature of the employment on which the plaintiff engaged that his son should serve.  If you find that his contract of service or the duties which he engaged to perform were such that it was within the contract or within the scope of those duties that the son should assist in the repair of the machinery in question, and that the son when injured was in the discharge of a duty or service covered by the contract of employment, then the company is not liable for the negligence of Collett (if he was negligent) with respect to ordering the son to ascend the ladder and hold the belt away from the shaft.   [But I draw this distinction; if the work which the son was ordered by Collett to do, was not within the contract of service, was not one of the duties which fell within the contract of employment, but was outside of it, then Collett, in ordering the service in question (if he was in the scope and course of his duties and power at the time) must, as to this act, be taken to represent the company (which is presumed to be constructively present); and if that act was wrongful and negligent, as hereinafter defined, the company, his employer, would be liable for the damages caused by such negligent and wrongful act; and the principle, that the master is not liable for the neglect of a co-employé in the same service, has no application, or no just application to such a case; for in such a case they are not, in my judgment, in any proper sense ' fellow-servants in the same common service.']  "

To the part of the instructions included in brackets, the defendants excepted; and the jury having found for the plaintiff, and judgment being entered accordingly, the case was now here on the exception.

*Mr. C. P. James* (*a brief of Mr. A. J. Poppleton being filed*), *for the plaintiff in error:*

The rule is, in the absence of statutory enactment, settled both in England and in this country, that, with certain exceptions which it was not pretended applied to this case, the master is not liable to his servant for injuries accruing to

him by reason of the negligence of a fellow-servant engaged in a common employment.

The court, in instructing the jury, not denying the rule to be settled as above stated, sought to incorporate into it an exception, which is believed to be without any precedent whatever, and in conflict with certain established principles regulating the relation in question.

. If the service during which the accident happened was without the scope of the boy's duty and employment, then the boy, when directed by Collett, was at liberty to refuse to obey. In obeying he was in the position of a mere volunteer; in the position of a bystander who should assist at the request of the company's servant. Now a volunteer, assisting at the request of the master's servant, assumes the character of a fellow-servant, and the master is not liable for injury arising from negligence of fellow-servants.* It makes no difference that plaintiff's son was a minor, sixteen years of age.†

It was error to instruct the jury that if the work which the son was ordered by Collett to do, was not within the contract of service, but was outside of it, then Collett, in ordering the service in question (if he was within the scope and course of his duties and powers at the time) must, as to this act, be taken to represent the company (which is presumed to be constructively present).

Collett was clothed with no discretion in hiring, discharging, or assigning to duty. He was a mere superintendent of a particular kind of work and machinery, hired and assigned to his duty as the boy was. He could not, therefore, in any sense, be said to represent the company as constructively present. The case of *Murphy* v. *Smith*‡ decides the question. The defendant there was the proprietor of a match manufactory. One Simlack was superintendent or manager. Under him was Debor, a workman who, in Simlack's absence, managed the establishment. The plaintiff,

---

\* *Degg v. Midland Railway Co.*, 40 English Law and Equity Reports, 376.

† *King v. Boston and Worcester Railroad Co.*, 9 Cushing, 113.

‡ 19 Common Bench, New Series, 361.

one Murphy, a boy of tender years, had been hired by Sim-
lack, and was set to stir a compound—liable to explosion
when not skilfully done—with a stick, and in the presence of
Debor, whose duty it was to mix the compound, which ex-
ploded.

The court submitted to the jury whether the accident was
caused by the negligence of Debor, and whether he was at
the time acting as manager of the establishment. The jury
answered both questions in the affirmative. The court, in
its opinion, says, " that the accident was the result of Debor's
negligence, and that he is not shown to have filled any other
position in relation to the plaintiff than that of a fellow-
workman."

*Messrs. J. I. Redick and Clinton Briggs, contra.*

Mr. Justice DAVIS delivered the opinion of the court.

It was assumed on behalf of the plaintiff in error, on the
argument of this cause, that the master is not liable to one
of his servants for injuries, resulting from the carelessness
of another, when both are engaged in a common service,
although the injured person was under the control and di-
rection of the servant who caused the injury. Whether this
proposition, as stated, be true or not, we do not propose to
consider, because, if true, it has no application to this case.

It is apparent, from the findings in the present suit, if the
rule of the master's exemption from liability for the negli-
gent conduct of a coemployé in the same service be as broad
as is contended for by the plaintiff in error, that it does not
apply to such a case as this. This rule proceeds on the
theory that the employé, in entering the service of the prin-
cipal, is presumed to take upon himself the risks incident to
the undertaking, among which are to be counted the negli-
gence of fellow servants in the same employment, and that
considerations of public policy require the enforcement of
the rule. But this presumption cannot arise where the
risk is not within the contract of service, and the servant
had no reason to believe he would have to encounter it. If

it were otherwise principals would be released from all obligations to make reparation to an employé in a subordinate position for any injury caused by the wrongful conduct of the person placed over him, whether they were fellow-servants in the same common service or not. Such a doctrine would be subversive of all just ideas of the obligations arising out of the contract of service, and withdraw all protection from the subordinate employés of railroad corporations. These corporations, instead of being required to conduct their business so as not to endanger life, would, so far as this class of persons were concerned, be relieved of all pecuniary responsibility in case they failed to do it. A doctrine that leads to such results is unsupported by reason and cannot receive our sanction.

The injury in this case did not occur while the boy was doing what his father engaged he should do. On the contrary, he was at the time employed in a service outside the contract and wholly disconnected with it. To work as a helper at a moulding machine, or a common work-hand on the floor of the shop, is a very different thing from ascending a ladder resting on a shaft, to adjust displaced machinery, when the shaft was revolving at the rate of 175 to 200 revolutions per minute. The father had the right to presume when he made the contract of service that the company would not expose his son to such a peril. Indeed, it is not possible to conceive that the contract would have been made at all if the father had supposed that his son would have been ordered to do so hazardous a thing. If the order had been given to a person of mature years, who had not engaged to do such work, although enjoined to obey the directions of his superior, it might with some plausibility be argued that he should have disobeyed it, as he must have known that its execution was attended with danger. Or, at any rate, if he chose to obey, that he took upon himself the risks incident to the service. But this boy occupied a very different position. How could he be expected to know the peril of the undertaking? He was a mere youth, without experience, and not familiar with machinery. Not being

able to judge for himself he had a right to rely on the judgment of Collett, and, doubtless, entered upon the execution of the order without apprehension of danger. Be this as it may, it was a wrongful act on the part of Collett to order a boy of his age and inexperience to do a thing which, in its very nature, was perilous, and which any man of ordinary sagacity would know to be so. Indeed, it is very difficult to reconcile the conduct of Collett with that of a prudent man, having proper regard to the responsibilities of his own position and the rights of others. It is charitable to suppose that he did not appreciate the danger and acted without due deliberation and caution. For the consequences of this hasty action the company are liable, either upon the maxim of respondeat superior, or upon the obligations arising out of the contract of service. The order of Collett was their order. They cannot escape responsibility on the plea that he should not have given it. Having intrusted to him the care and management of the machinery, and in so doing made it his rightful duty to adjust it when displaced, and having placed the boy under him with directions to obey him, they must pay the penalty for the tortious act he committed in the course of the employment. If they are not insurers of the lives and limbs of their employés, they do impliedly engage that they will not expose them to the hazard of losing their lives, or suffering great bodily harm, when it is neither reasonable nor necessary to do so. The very able judge who tried the case instructed the jury on the point at issue in conformity with these views, and we see no error in the record.

JUDGMENT AFFIRMED.

Dissenting, Mr. Justice BRADLEY.

[See Packet Company *v.* McCue, *supra*, p. 508.]