Filed June 22, 1889.

—————◆—————

No. 13,018.

## The Brazil Block Coal Company *v.* Gaffney.

**Master and Servant.**—*Boy.*—*Character of Work to be Required of.*—*Legal Implication.* —Where a boy, without experience, is employed to perform labor, the character of the service to be required of him by the master is implied to be such as is within his capacity.

**Same.**—*Instruction and Warning.*—*Liability of Master for Injury.*—If a boy, without being instructed or cautioned, is set to perform a service of which, on account of his immature age, he is incapable of appreciating the hazards, although visible, or if, being instructed and cautioned, his mind and strength are yet so immature that he is not capable of availing himself of the instruction and warning or of safely performing the service, the master is liable for injuries sustained by him.

**Same.**—*Coal Mine.* —*Requiring Boy to Assist in Coupling Coal-Cars.*—Where a boy, ten years of age, employed by a coal mining company and as-

signed to work within his capacity at the top of the mine, is, without being instructed or cautioned, ordered by the person having control of the workmen at the top of the mine, or by a workman with the knowledge and consent of such person, to quit his regular work and assist in switching and coupling coal-cars, which he does, believing it his duty to obey, and while so engaged is injured, the master is liable.

SAME.—*Compulsion.— Complaint. — Demurrer.— Motion to Make Specific.*— Where it is alleged that the plaintiff was "compelled" to do the act resulting in his injury, an objection that the facts constituting the compulsion are not stated can not be reached by demurrer, but only by a motion to make the complaint more specific.

SAME.—*Jury to Determine What Constitutes Compulsion.*—As to what would amount to compulsion where a boy ten years old is required, by men having authority to direct him, to perform a dangerous service, is a question for the jury.

From the Clay Circuit Court.

*G. A. Knight* and *A. W. Knight*, for appellant.

*J. A. McNutt* and *J. Q. Cornell*, for appellee.

BERKSHIRE, J.—There are two paragraphs in the complaint, the substance of each of which we will state. The substance of the first paragraph is as follows :

On the 2d day of July, 1885, the appellant was the owner and in possession of a certain coal mine, known as " No. 3," and was on that day engaged in mining and removing therefrom large quantities of coal ; and to facilitate the removal of the coal mined from said mine, a switch had been built, connecting the said mine with the Vandalia railroad, which, together with certain cars that were on said switch for the purpose of receiving the coal that was being mined, was under the absolute control of the appellant, who on that day was engaged in loading, switching and coupling said cars, the said loading, switching and coupling being required in the removal of the coal that was being mined ; that the appellant kept in its employ at said mine one Thomas Young, who was its bank-boss, or mine superintendent, and who was, by virtue of his position and the authority conferred upon him, authorized and empowered to hire and discharge work-

men at and about said mine, and given the management and control of all the work in and about the same, and to whom was delegated all the duties which the appellant owed to its employees, among which were the duties of keeping the said mine, its rooms and entries, in good and safe repair, to use reasonable diligence in the employment of careful and prudent workmen, to give them instructions concerning the subject of their employment and duties with respect to each other, and to caution young and inexperienced workmen of the risks to which they would be exposed in operating dangerous machinery, handling unsafe implements, or in performing work which would expose such persons to perils of which they had no knowledge. To assist said Young in performing his duties as an overseer of the workmen and work, one John Mushett was employed by and with the knowledge and consent of the appellant, and with like knowledge and consent was given the position of weighman, or weigh-boss, of said mine, and the immediate control of the workmen and work at and about the top of the same, including the management and control of the cars, and everything pertaining to them.

On the — day of ——, 1885, the appellee was hired by the said Young (the contract being made with his mother, his natural and legal guardian), as a workman for the appellant, and was placed under the control of the said Mushett, and was assigned to the work of greasing bank-cars when elevated out of said mine, at a place called " Tipple ; " that after the appellee, who was of very tender years, had been at work for the appellant for a number of weeks under the control of the said Mushett and subject to his orders, the said Mushett directed him to assist one Haines, who was also subject to the orders of Mushett, in switching the cars on said switch, and at the proper time to couple the same ; that in giving the said order the said Mushett was acting in the line of his duty, and well knew that the appellee was very immature in years, without experience in, and physically un-

able to perform, such work, which was very dangerous and specially hazardous, and at the time of the giving of said order to the appellee, or before, no warning was given him of its dangerous or hazardous character; and had the said Mushett, or any one else, cautioned the appellee, owing to his tender years (being but ten years of age) and the immaturity of his mind, he could not have retained the words of caution in his mind with sufficient distinctness to have performed such work with safety to himself; that the said Young wholly failed to give the appellee instructions concerning the scope of his employment or his relation to the other workmen at the time he was placed under the control of the said Mushett, and that such instructions were never given him at any time by any person ; and in consequence of the failure of the appellant to do its duty in the respect named, the appellee, while assisting the said Haines in the attempt to couple the said cars, and while exercising that care and caution which might be expected of one so young, and without fault or negligence on his part, his left hand was caught between the cars and so bruised, crushed and mangled that amputation became necessary.

The second paragraph differs from the first, in that it alleges that the appellee was employed to do non-hazardous work, and charges that the work which he was doing was hazardous, and details the circumstances attending the accident, which are, in substance, as follows : That after the appellee had been in the employ of the appellant for some weeks, engaged in the performance of such work as came within his contract of hire, and subject to the control of the said Mushett, he was, with the knowledge and consent of the appellant, directed, ordered and compelled by one Haines, the leveller of said mine, and one of the employees of the appellant, and who was under the control of the said Mushett, and in the presence of the latter, and with his consent, knowledge and acquiescence, and while Haines and Mushett were acting within the scope of their employment, to quit

his regular work and assist the said Haines and Mushett in coupling cars delivered on said switch for the purpose aforesaid, which work was dangerous and specially hazardous, and attended with great peril for one so young and inexperienced, and was no part of the work he had contracted to perform ; that Haines well knew, when he required and compelled the appellee in the manner stated to engage in said work, of the dangerous character of the same, and knew his age and inexperience, and gave him no information, warning or caution, nor did anyone else.

Demurrers were overruled to each of these paragraphs of complaint, and exceptions reserved, after which the appellant answered in one paragraph, which was a general denial.

There was a jury trial, resulting in a verdict for the appellee, and, over a motion for a new trial, followed with the proper exceptions, judgment was rendered for the appellee.

Several errors are assigned, the substance of which is as follows:

1. The court erred in overruling the demurrer to the first paragraph of complaint.

2. The court erred in overruling the demurrer to the second paragraph of complaint.

3. The court erred in overruling the motion in arrest of judgment.

4. The complaint does not state facts sufficient to constitute a cause of action.

5. The court erred in overruling the motion for a new trial.

We need not consider the fourth error, as it is covered by the first and second. In our opinion both paragraphs of the complaint are good, and the court committed no error in overruling the demurrers.

The first paragraph of the complaint does not allege that the appellee was hired to perform non-hazardous work, or to perform labor of a particular kind or character ; but the age of the appellee is stated to have been but ten years, that

because of his tender age his mind was immature, and he was without experience.

Where a boy but ten years of age, and without experience, is employed to perform labor, the character of the labor to be required of him is implied; it is such as is within the compass of a boy's age and experience.

No one will contend, we think, that the master who employs a ten year-old boy, without experience, expects of him the same amount or kind of service that he expects when he employs a mature and experienced man. And that the appellant contemplated, when it took the appellee into its service, that he was to perform such labor as would be within his capacity, he was at first given a position down in the mine, but as soon as his extreme youth was made known he was given employment at the top of the mine, lighter and less dangerous in character.

Counsel for the appellant claim that the first paragraph of the complaint falls within the reasoning of this court in the case of *Brazil, etc., Coal Co.* v. *Cain*, 98 Ind. 282. We do not think so. It is true that the employee in that case was a minor, but he was nineteen years of age, a well developed and apparently strong man, and, to all appearances, as well qualified to understand and provide against the hazard or danger that would attend any kind of labor that he might have been called on to perform as if he had been an adult, and in the consideration of the case he is so regarded. We quote from the opinion :

" In the case at bar the appellee does not claim in her complaint that her son did not have, notwithstanding his alleged non-age or minority, full knowledge of all the hazards of his employment. On the contrary, it appeared from the complaint that appellee's son was nineteen years of age at the time of his injury and death, and for some time previous had been an employee of the appellant in mining coal. It must be assumed, therefore, in the absence of any showing to the contrary, that he voluntarily engaged in driving

the coal-cars through the avenues of the mine, with full knowledge of the dangers of the business. In such case neither the employee nor his mother, the appellee, could legally claim that on account of his infancy the appellant should be held liable for his injury and death caused, as alleged, by the negligence of his fellow servant. Although the appellee's son was a minor, under the age of twenty-one years, at the time he entered into the appellant's service, and at the time of his injury and death, yet it appeared that he was of sufficient age and experience to understand fully the hazard and dangers of the service, and therefore it must be held that by engaging in such service, notwithstanding his minority, he took upon himself the natural and ordinary risks incident to the business in which he was engaged, among which was the negligence of his fellow servants, whether of high or low degree, in the same common enterprise."

The proper distinction, as we think, is taken in the case of *Sullivan* v. *India Manufacturing Co.*, 113 Mass. 396. We take the following from the opinion of the learned judge in that case : " Though it is a part of the implied contract between master and servant (where there is only an implied contract), that the master shall provide suitable instruments for the servant with which to do his work, and a suitable place where, when exercising due care himself, he may perform it with safety, or subject only to such hazards as are necessarily incident to the business, yet it is in the power of the servant to dispense with this obligation. When he assents therefore to occupy the place prepared for him, and incur the dangers to which he will be exposed thereby, having sufficient intelligence and knowledge to enable him to comprehend them, it is not a question whether such a place might, with reasonable care, and by reasonable expense, have been made safe. His assent has dispensed with the performance on the part of the master of the duty to make it so. Having consented to serve in the way and manner in which the business was being conducted, he has no proper ground

of complaint, even if reasonable precautions have been neg-
lected. In the present case, the evidence of the plaintiff was
that he went to work in the place pointed out by the defend-
ants.  He thus consented to the dangers attending the work,
all of which was apparent; and, if he had sufficient knowledge
and capacity to comprehend them, he can not now complain
that such place might at moderate expense have been made
safer.  *  *  *  *  It may frequently happen that the dan-
gers of a particular position for, or mode of doing work are
great, and apparent to persons of capacity and knowledge of
the subject, and yet a party from youth, inexperience, ig-
norance, or general want of capacity may fail to appreciate
them.  It would be a breach of duty on the part of the mas-
ter to expose a servant of this character, even with his own
consent, to such dangers, unless with instructions or cautions
sufficient to enable him to comprehend them, and to do his
work safely, with proper care on his own part.  It was
therefore competent for the plaintiff to show that there had
been such a breach of duty on the part of the defendants,
and although he had in fact gone to work in the place
pointed out, assenting so to do, yet that he was incapable of
appreciating the dangers to which he exposed himself, or of
doing the work safely, without instructions or cautions
which he did not receive."

The following is from the opinion, delivered by HOAR, J.,
in *Coombs* v. *New Bedford Cordage Co.*, 102 Mass. 572, which
is a leading case :  " Whether it was possible for the plaintiff
to have met with the accident from inadvertence or want
of acquaintance with the danger of his position, without be-
ing chargeable with a want of reasonable care, we think is a
question to be submitted to the jury.  The facts that he saw
or might have seen the machinery in motion, and might
have known that it was dangerous to expose himself to be
caught in it, are considerations which should be regarded on
one side.  On the other, some allowance should be made for
his youth, his inexperience in the business, and for the re-

liance which he might have placed upon the direction of his employers." See *O'Connor* v. *Adams*, 120 Mass. 427.

In the case of *Rock* v. *Indian Orchard Mills*, 142 Mass. 522, which was a suit brought by a boy thirteen years old to recover for personal injuries, the court decided that it was the duty of the defendant to give suitable instructions to the plaintiff, having reference to his age and capacity, so as to enable him to understand the dangers, whatever they were, of the employment in which he was engaged.

Where the master orders his servant, a child, into a service which he did not undertake to perform, and while in such service, the same being attended with peculiar hazard, the servant is injured while obeying the command, the master is liable.  2 Thomp. Neg., p. 976, sections 7 and 8.

In *Railroad Co.* v. *Fort*, 17 Wall. 553, Judge DAVIS delivered the opinion in the case, and as it is very much in point to the case under consideration we will quote from it at considerable length : " It is apparent, from the findings in the present suit, if the rule of the master's exemption from liability for the negligent conduct of a co-employee in the same service be as broad as is contended for by the plaintiff in error, that it does not apply to such a case as this.   This rule proceeds on the theory that the employee, in entering the service of the principal, is presumed to take upon himself the risks incident to the undertaking, among which are to be counted the negligence of fellow servants in the same employment, and that considerations of public policy require the enforcement of the rule.   But this presumption can not arise where the risk is not within the contract of service, and the servant had no reason to believe he would have to encounter it.  If it were otherwise, principals would be released from all obligations to make reparation to an employee in a subordinate position for any injury caused by the wrongful conduct of the person placed over him, whether they were fellow servants in the same common service or not.  Such a doctrine would be subversive of all just ideas of the obligations

arising out of the contract of service, and withdraw all protection from the subordinate employees of railroad corporations. These corporations, instead of being required to conduct their business so as not to endanger life, would, so far as this class of persons were concerned, be relieved of all pecuniary responsibility in case they failed to do it. A doctrine that leads to such results is unsupported by reason and can not receive our sanction. The injury in this case did not occur while the boy was doing what his father engaged he should do. On the contrary, he was at the time employed in a service outside the contract and wholly disconnected with it. To work as a helper at a moulding machine, or a common work-hand on the floor of the shop, is a very different thing from ascending a ladder resting on a shaft, to adjust displaced machinery, when the shaft was revolving at the rate of 175 to 200 revolutions per minute. The father had the right to presume when he made the contract of service that the company would not expose his son to such a peril. Indeed, it is not possible to conceive that the contract would have been made at all if the father had supposed that his son would have been ordered to do so hazardous a thing. If the order had been given to a person of mature years, who had not engaged to do such work, although enjoined to obey the directions of his superior, it might with some plausibility be argued that he should have disobeyed it, as he must have known that its execution was attended with danger. Or, at any rate, if he chose to obey, that he took upon himself the risks incident to the service. But this boy occupied a very different position. How could he be expected to know the peril of the undertaking? He was a mere youth, without experience, and not familiar with machinery. Not being able to judge for himself he had a right to rely on the judgment of Collett, and, doubtless, entered upon the execution of the order without apprehension of danger. Be this as it may, it was a wrongful act on the part of Collett to order a boy of his age and inexperience to do a thing which, in its very nature, was

The Brazil Block Coal Company *v.* Gaffney.

perilous, and which any man of ordinary sagacity would know to be so. * * * For the consequences of this hasty action the company is liable, either upon the maxim of *respondeat superior,* or upon the obligations arising out of the contract of service."

In the case of *Jones* v. *Old Dominion Cotton Mills,* 82 Va. 140 (3 Am. St. R. 92), the learned judge delivering the opinion of the court said: "In the case at bar, the plaintiff, a boy of thirteen years of age, with little experience and familiarity with machinery, and hired from his father by the defendant company 'to sweep, carry water, and fill the buckets with quills' in the weaving department of its cotton mills, was ordered into the position of danger already described, by one in the employment of the company, and, under the circumstances, on that occasion necessarily representing the company. When the injury occurred to this boy he was not doing the work his father engaged him to do. On the contrary, he was, at the time, employed in a service outside the contract and wholly disconnected therewith. To sweep, carry water, and fill buckets with quills, is quite a different thing from standing on a ladder and holding up a heavy belt, surrounded by the belts of four looms in dangerous proximity to his person, and these belts plying over pulleys making over a hundred and twenty revolutions per minute. The one is the work of a boy, and within the compass of a boy's strength and experience ; the other requires the strength, experience and judgment of a man, and is a man's work, to say the least. Thus situated, holding up and aiding to adjust a displaced belt that ran a loom in the upper room, the plaintiff received the injury which makes him a comparatively helpless cripple for life. Neither he nor his father, when the contract of service was made, had any ground to expect that he would be called on to encounter any such peril. Eastwood, the second boss, was entrusted with the care, management and repair of the machinery, in connec-

The Brazil Block Coal Company v. Gaffney.

tion with the repairs of which this shocking accident occurred. He needed help to mend a broken belt and readjust displaced machinery. There was no one present in the room when the adjustment was to be effected except this boy, the plaintiff in error. Eastwood, by the usage of this company's employees, was not only empowered, but, in the nature of things, had authority to call to his assistance this boy, who never for a moment doubted his authority or hesitated to obey. In mending the belt, and readjusting the machinery, Eastwood was performing a plain duty he owed his principal, and was acting within the scope of his employment. Only four of the seven male hands ordinarily required to run the machinery of the weaving department were on duty that day, the others being absent on leave. In attempting to run the machinery with an insufficient number of hands, Eastwood was compelled, in the course of his regular duty, to call for help. He called this boy, and ordered him into a position of danger, the result of which was irreparable injury to him. In so doing, Eastwood was the representative of his principal, and his order, his negligent want of proper care and caution, was the negligent order and want of proper care of Eastwood's principal; and liability for the consequences can not be avoided by the contention that Eastwood had no authority and should not have given the order. The defendant company is liable on the plain principle of *respondeat superior*, Eastwood being then and there its *alter ego*. Wharton Law of Neg., section 232; *Malone* v. *Hathaway*, 64 N. Y. 5 (21 Am. Rep. 573). The company is also liable on the ground that by the act of its agent it exposed the boy to perils outside of the ordinary risks incident to his contract of service." *Railroad Co.* v. *Fort*, 17 Wall. 553; *Lalor* v. *Chicago, etc., R. R. Co.*, 52 Ill. 401.

We extract the following from the note following *Fisk* v. *Central Pacific R. R. Co.*, 1 Am. St. Rep. 22, 28 (72 Cal. 38), which we adopt as expressing our views: " Notwithstanding some general declarations to the contrary, which may occa-

sionally be found in the reports, there is no question that the law recognizes some distinction between the duty which a master owes his adult servant or employee, and that which he owes to an employee, who from his youth or inexperience, or other mental immaturity or infirmity, is not able, without instruction, to understand the perils to which he is exposed in the course of his employment. This distinction, as near as we can express it, is this: That as to the latter class of servants, the master must give them full instructions with respect to the dangerous character of the machinery with or about which they are employed, and of the means necessary to be used to avoid those dangers." See *Brazil Block Coal Co.* v. *Young,* 117 Ind. 520; *Louisville, etc., R. W. Co.* v. *Frawley,* 110 Ind. 18.

In *Jones* v. *Florence Mining Co.,* 66 Wis. 268 (57 Am. Rep. 269), the learned judge delivering the opinion said: "We think it is now clearly settled that if a master employs a servant to do work in a dangerous place, or where the mode of doing the work is dangerous and apparent to a person of capacity and knowledge of the subject, yet if the servant employed to do work of such dangerous character or in a dangerous place, from youth, inexperience, ignorance, or want of general capacity, may fail to appreciate the dangers, it is a breach of duty on the part of the master to expose a servant of such character, even with his own consent, to such dangers, unless he first gives him such instructions or cautions as will enable him to comprehend them, and do his work safely, with proper care on his part." That case, in its facts, is very much like the case we are considering.

In *Dowling* v. *Allen,* 74 Mo. 13 (41 Am. Rep. 298), the conclusion of the court is stated as follows: "An inexperienced boy of seventeen, employed to work on visibly dangerous machinery, is entitled to warning of the danger from his employer." See *Smith* v. *Peninsular Car Works,* 60 Mich. 501 (1 Am. St. Rep. 542).

There is another class of cases where the master will not

be relieved from liability for injuries to his servant, who is required to perform dangerous and hazardous work, even though the dangers and hazards of the work are open and visible, and warning and instruction are given, as when the servant is so young and inexperienced as not to be able to comprehend and guard against the dangers and hazards to which he is exposed. *Pittsburgh, etc., Ry. Co.* v. *Adams,* 105 Ind. 151.

In *Hickey* v. *Taaffe,* 105 N. Y. 26, the rule is declared to be as follows: " There is no doubt that in putting a person of immature years at work upon machinery which in some aspects may be termed dangerous, an employer is bound to give the employee such instructions as will cause him to fully understand and appreciate the difficulties and dangers of his position and the necessity there is for the exercise of care and caution ; merely going through the form of giving instruction, even if such form included everything requisite to a proper discharge of his duties by such employee, if understood, would not be sufficient. In placing a person of this description at work upon dangerous machinery, such person must understand, in fact, its dangerous character and be able to appreciate such dangers, and the consequences of a want of care, before the master will have discharged his whole duty to such employee." *Sullivan* v. *India Mfg. Co., supra; Finnerty* v. *Prentice,* 75 N. Y. 615. But in the opinion from which we have last quoted the court further says : " If a person is so young that even after full instructions he wholly fails to understand them and does not appreciate the dangers arising from a want of care, then he is too young for such employment and the employer puts or keeps him at such work at his own risk."

In *Hill* v. *Gust,* 55 Ind. 45, the learned judge who wrote the opinion said : " This exposition of the law is based upon the theory that an employer is bound, under the law, to give a person of tender years, whom he employs, due caution, explanation and instruction, when he sets him to work in a dangerous and hazardous place. That the mere

fact that he could have seen that such place was dangerous and hazardous, by exercising his faculty of sight, is not of itself sufficient evidence to hold an employee accountable for contributory negligence; but that is a question for the jury to determine from all the facts." The mind of an inexperienced boy, who has but reached the immature age of ten years, is incapable of comprehending and guarding against dangers and hazards that attend the coupling of railroad cars, and he is without the physical strength required to perform the work successfully, and if directed by his employer, or those under whose direction and command he is placed, to perform such dangerous and hazardous work, and while thus engaged he suffers injury, the employer is liable. See *St. Louis, etc., R. W. Co.* v. *Valirius*, 56 Ind. 511; *Jones* v. *Old Dominion Cotton Mills, supra.*

As we have seen, it is alleged in each paragraph of the complaint that the appellee was placed under the control of one Mushett, who was the appellant's weigh-boss at the mine, and had control of all the workmen and work at and about the top of the mine, including the work on and about the cars delivered there to be loaded with coal; and it is alleged in the first paragraph that Mushett ordered the appellee to assist Haines, who was also under his control, in switching the cars that were on the switch to be loaded, and were loaded, and at the proper time to make the couplings; and in the second paragraph it is alleged that Haines, in the presence and with the knowledge, acquiescence and consent of Mushett, directed, ordered and compelled the appellee to quit his regular work and to assist them in switching and coupling the said cars.

We do not apply the rule which maintains in cases where one servant is injured because of the negligence of a fellow servant, and which was applied in *Brazil, etc., Coal Co.* v. *Cain, supra,* because, as we have seen, this case does not belong to that class; nor do we rest our conclusion upon the maxim *respondeat superior.* Mushett (if not Haines), under the cir-

cumstances of this case, was the agent of the appellant, and the superior of the appellee; it was his right to command, and the appellee's duty to obey, and, considering the immature age of the appellee, we must assume that he obeyed the commands of his superiors, supposing that it was his duty so to do, without regard to the dangers or hazards that he would encounter, and without a knowledge thereof.

It is said in the case of *Chicago, etc., R. W. Co.* v. *Bayfield,* 37 Mich. 205: "In this case Smith had charge of the train and of the men employed with it. In what he did, he was not purposely committing any wrong outside of the employment, but his wrong was committed while acting in the very capacity in which he was employed, and had for its manifest purpose not to injure Williams but to advance the interest of the railway company. As between the company and any other than a fellow servant, there could be no question that his act should be deemed the act of the company. But we also think that where the superior servant, by means of an authority which he exercises by delegation of the master, wrongfully exposes the inferior servant to risks and injury, the master must respond. It is only where the risks properly pertain to the business and are incident to it, that the master is excused from responsibility; and a risk of this nature not being one of the kind the general rule applies, and he must answer for the misconduct of his agent." See *Lalor* v. *Chicago, etc., R. R. Co., supra.*

We take the following, which is very much in point, from *Dowling* v. *Allen, supra:* "Nor do we think that in this instance, King, who gave the plaintiff the order to stop the engine, was plaintiff's fellow servant. While it appears that Fisher was foreman of the establishment, King had charge of the construction of the turn-table, and Fisher directed plaintiff to go with King and do whatever he directed. * * * Here King was foreman of the hands constructing the turn-table. They were under him, and the plaintiff was expressly ordered by Fisher to do whatever King told

him." See *Jones* v. *Florence Mining Co., supra ; Jones* v. *Old Dominion Cotton Mills, supra ; Broderick* v. *Detroit Union Depot Co.,* 56 Mich. 261 (56 Am. Rep. 382) ; *Corcoran* v. *Holbrook,* 59 N. Y. 517 (17 Am. Rep. 369); *Railroad Co.* v. *Fort, supra ; Atlas Engine Works* v. *Randall,* 100 Ind. 293 ; *Chicago, etc., R. W. Co.* v. *Harney,* 28 Ind. 28 ; Wood Master and Servant, section 350.

The point is made that the facts constituting the compulsion alleged in the second paragraph are not set out, and that it was necessary to plead the facts.

We are of the opinion that the paragraph would have been sufficient had the word " compelled " been omitted, but were it not, the infirmity was not reached by a demurrer, but a motion to make more specific should have been made. This has been decided over and over again as to the charge of negligence, and we know of no reason why the rule should not be the same when a compulsive act is alleged. *Louisville, etc., R. W. Co.* v. *Jones,* 108 Ind. 551, and cases cited.

What we have already said disposes of the third error alleged, that the court erred in overruling the motion in arrest of judgment.

We have examined the instructions given by the court of its own motion, as well as those asked for by the appellant and given, and our conclusion is that if any error is to be found therein, the appellant was the party benefited, and has no cause to complain.

One suggestion made by appellant's counsel in reference to the sixth instruction we will notice specially. It is contended that the instruction relates to the second paragraph of the complaint altogether, and to the act of compulsion therein alleged, and that it must have misled the jury, for the reason that there was no evidence introduced tending to show compulsion. Giving to the word " compelled " the definition contended for by counsel, and remembering the age of the appellee, and that he was in the presence of two stalwart men and under the control and command of one;

of them, we think it was a question for the jury as to what would amount to compulsion. Evidently it would not require the exercise of as great will power to compel obedience on the part of a boy ten years old as would be necessary in the case of a strong, stalwart man.

We are not prepared to say that the preponderance of the evidence was with the appellee, if we are governed by the number of witnesses on either side and the ground covered by their testimony ; but the weight of the evidence and credibility of the witnesses were questions (1) for the jury, and (2) for the court in which the case was tried.

The appellee testified that he was never instructed as to the manner of coupling cars or its dangers; that Mushett and Haines both, on the occasion in question, told him to knock out the block and couple the cars. That he received his injuries while coupling cars at the mine, and during the time he was in the employment of the appellant, is not controverted.

We find no error in the record for which the judgment ought to be reversed.

Judgment affirmed, with costs.

Coffey, J., took no part in this case.

Filed June 25, 1889.