THE CHICAGO AND GREAT EASTERN RAILWAY COMPANY *v.* HARNEY.

RAILROADS.—EMPLOYEES.—NEGLIGENCE.—Where an employee of a railway company, hired to labor in a particular service, and no other, is compelled by a fellow employee of such company to labor at a business much more perilous than that which he engaged to do, and while thus laboring receives an injury, the company is liable for the damages occasioned by the injury.

SAME.—MASTER AND SERVANT.—It is the duty of a master, as far as reasonable care in the selection can accomplish that end, to employ none but competent and trustworthy servants; and if he fails in this, and takes into his service those who are incompetent or careless, he should answer to his other servants for the consequences which may result to them from such failure.

SAME.—Where the person injured is a minor, who is, at the time he receives the injury, in the employ of a railway company for hire, and the injury is caused by his own negligence, or the negligence of a fellow-servant engaged in the same general employment, an action cannot be maintained by the father of such minor for the injury received, unless the company was negligent in hiring the co-servant by whose negligence the injury was caused.

APPEAL from the *Howard* Common Pleas.

*Solomon R. Harney* brought his action against *The Chicago and Great Eastern Railway Company* to recover damages for loss of time, and for medical attendance upon his minor son,

*James R. Harney*, who was injured while in the service of said company.

The complaint alleged that *James R. Harney*, the son of the plaintiff, who was aged eighteen years, and was maintained and supported by the plaintiff, was, on the 13th day of *September*, 1865, employed by the defendant as a track hand on said road, in *Tipton* county, in the State of *Indiana*, in pursuance of a contract made for such service only, by and between the plaintiff and the defendant, at the rate of thirty-nine dollars per month; that on said day the defendant, by one *Alexander Taylor*, a servant of said company, acting in the capacity of road-master, and having the charge of a construction train, running upon the road of said defendant for the purpose of distributing ties upon the line thereof, for the repair of the track, without the knowledge or consent of the plaintiff, directed and compelled the said son of the plaintiff to assist said *Taylor*, and other employees of said defendant, in loading and distributing ties upon the line of said road; that said ties were thrown from said train, at such points as were designated by said *Taylor*, while said train was in motion and running at a speed of from ten to fifteen miles per hour; that said *James R.*, while so engaged, was thrown from the train to the ground, with such force and violence as to cause severe bodily injuries, &c.; that these injuries were occasioned by his throwing a tie from the said train, while the same was in motion as aforesaid, which struck a post standing near the track, and forming part of the fence at a cattle guard, he not knowing that the post was there, and the end of which tie was thrown around with great force by the speed of the car, and projected over the car and struck him, throwing him from the train; that said *Taylor* was incompetent to manage said train, and that the defendant had full knowledge of such incompetency at the time said *Taylor* was hired, and at the time said injuries were received; that neither the plaintiff nor his said son had any knowledge of the incompetency of said *Taylor;* and that the injuries

received by the said *James R.* were the result of such incompetency, and not of any fault or negligence on the part of the plaintiff, or his said son; and that no fault or neglect of the plaintiff, or of his said son, contributed thereto.

The defendant demurred to the complaint, and assigned for cause of demurrer "that the complaint did not state facts sufficient to constitute a cause of action." The demurrer was overruled by the court below, and the proper exception taken by the defendant.

FRAZER, J.—We think that the demurrer to the complaint was correctly overruled. According to its averments, the son of the plaintiff was not engaged as a servant of the defendant when the injury occurred, in any sense where the general doctrine can be applied that a master is not liable to a servant for injuries resulting from the fault of a fellow-servant engaged in the same general business. That doctrine has its foundations in justice and policy. The ordinary risks of the service in which one is engaged are usually, in fact, considered in making the engagement and adjusting the wages. And this may, with great propriety, be held to be always so in legal contemplation. Then, also, the servant has, commonly, better opportunities than the master of learning the incompetency or carelessness of his fellow-servant in the same employment. But in this case, it is alleged that the son was at the time not engaged in the service which he was hired to perform, nor indeed in a service which he or his father had consented that he should engage in, but, on the contrary, that he was "compelled" by the fellow-servant to labor at a business much more perilous, and was injured while so engaged. There was then no opportunity to adjust the compensation with a view to the risk. There was no consent to perform the service on any terms. It was a compulsory service, and under such circumstances neither justice nor policy requires that the master shall be acquitted of responsibility.

Then, again, a master ought to be bound to all the world

to employ none but competent and trust-worthy servants, so far as reasonable care in their selection can accomplish that end; and if he fails in this, knowing the incompetency or carelessness of those whom he takes into his service, he ought to answer to his other servants for the consequences which may result to them. The master has no right, either moral or legal, to impose upon them, knowingly, a needless peril. The complaint alleges that *Taylor*, the road-master, was incompetent to manage the train, and that that fact was known to the defendant when he was employed, and not known to either the plaintiff or his son.

So then, for both reasons, the complaint was sufficient. The first is so obvious that we are not aware that the exact question has ever been contested in any court, and therefore direct authority has not come under our notice. The second point is supported by numerous cases, among which are *Tarrant* v. *Webb*, 18 C. B., 797; *Mad River &c. Co.* v. *Barber*, 5 Ohio St. 541; *Keegan* v. *Western R. R. Co.*, 4 Seld. 175; *Perry* v. *Marsh*, 25 Ala. 659; *Patterson* v. *Wallace*, 28 Eng. Law and Eq. 48.

The answer was in four paragraphs: 1. General denial. 2. That the son was a servant of the defendant, and was injured in the performance of his duty as such, as the result of accident, and not in consequence of any negligence or misconduct of the officers of the defendant. 3. That the defendant was ignorant of the son's minority, and that he went on the "tie train" voluntarily, and not by compulsion. 4. That the injury was occasioned by the co-servants, in the same service.

The reply was a general denial. The issues were tried by a jury, and a verdict for the plaintiff, assessing his damages at $575, was returned. A motion by the defendant for a new trial was overruled and judgment rendered on the verdict. It is insisted here that a new trial should have been awarded.

The evidence utterly failed to show *Taylor's* incompetency as road-master. There was some contradiction as to

the nature of the employment, whether the hiring was to serve generally as a track hand, or whether the son was to be confined to work on a particular portion of the road, not including service on the "tie train." It was shown that the son went, upon *Taylor's* request, voluntarily upon the train, but without the plaintiff's knowledge or consent, to distribute ties, and was injured while doing so, in the manner alleged in the complaint, and it appeared to be the custom on the defendant's road for section hands employed to repair the road to labor upon the "tie trains" in distributing ties, whenever the road-master, who had control of them and of that train, so directed. The evidence was conflicting as to the speed of the train when the injury occurred. There was also some conflict as to whether there was any negligence or want of skill on the part of *Taylor*, at the time. There was some evidence tending to show that the negligence of the son, and his disregard of *Taylor's* directions, produced the injury; but this was also controverted by proof tending to show the contrary. The son was an infant, aged 18 years, though apparently of mature growth, and the plaintiff hired him to the defendant and received his wages.

Objection is made to instructions given to the jury, but we do not perceive any error in them, and we do not present them in detail for the reason that no useful purpose would be accomplished thereby. The objection made that they assume facts not in evidence is, we think, not true in fact. The questions of fact were all left to the jury.

But the court below did err, greatly to the prejudice of the defendant doubtless, in refusing the first and fifth instructions asked by the defendant. The first was, in substance, that if at the time of the injury the son was in the defendant's service for hire, and the injury was caused by his own negligence, or the negligence of a fellow-servant engaged in the same general employment, the verdict must be for the defendant, unless the defendant was negligent in hiring the co-servant by whose negligence the injury was caused. This is good law, and was applicable to the evi-

dence. The fifth was similar in effect, with the addition of the proposition that the minority of the son would, in such a case, make no difference.

Various other instructions were asked and refused, we think properly. They seem to us liable to objection, either because they do not definitely state the law, or because they were not applicable to the evidence. It is not necessary to prolong this opinion by stating them specifically.

It is urged also that the verdict is against the evidence. As it is not necessary for us, under the circumstances, to express an opinion on that subject, we deem it best not to do so, for the reason that the case upon the next trial may present very different facts, and we do not wish to occupy the field of investigation belonging to the jury which shall hereafter be charged with it. The frequency of this class of cases, and those of kindred character, and the facility with which damages are often recovered, seems to justify the general remark here, that it is often the duty of the judge presiding at *nisi prius* to interfere with verdicts where this court, consistently with the established rules by which it is governed, cannot interpose. That judge has opportunities of estimating the value of the evidence which this court has not. Here, much weight attaches and is due to the fact that, seeing and hearing the witnesses face to face, he has refused a new trial. It has been questioned whether the court of last resort should possess the power to order a new trial upon the evidence, no error of law existing on the record. However that may be, it is certain that no case should ever exist where this court could rightfully reverse the judgment upon that ground.

The judgment is reversed, with costs, and the cause remanded for a new trial.

*E. Walker*, for appellant.

*N. R. Linsday* and *J. A. Lewis*, for appellee.