The Cincinnati, Hamilton and Indianapolis Railroad Co. *v.* Madden.

Filed May 16, 1893.

———————◆———————

No. 15,288.

## THE CINCINNATI, HAMILTON AND INDIANAPOLIS RAILROAD COMPANY *v.* MADDEN.

PLEADING.—*Duplicity.*—*Sufficiency of Complaint.*—*Personal Injuries.*— *Railroad.*—In an action against a railroad company by an employe for damages because of personal injuries sustained, the paragraph of complaint, which states two causes of action, is not fatally defective \where objection is waived to the form of pleading, if either cause is sufficiently stated.

JUDGMENT.—*Sufficiency of Evidence to Sustain.*—A judgment will not be reversed as not being sustained by the evidence, when the evidence tending to support it is insufficient to, uphold it, disregarding all conflicting and unfavorable evidence thereto.

MASTER AND SERVANT.—*When Servant Does Not Assume Dangers Incident to Service.*—*Duty of Servant to Obey Orders.*—*Service Not Within Contract by Order of Master.*—Where a servant agrees for a given consideration to perform certain services, the servant assumes all the ordinary risks and dangers incident to such service; but where the master orders the servant to perform service other than that embraced in the contract of hire, a different rule prevails, and there is no implied agreement that the servant will take on himself the risks incident to the service, but, on the other hand, the master impliedly assures the servant that he has exercised reasonable care to have the place, machinery, etc., in a safe condition, and fit for the business for which they are used, and further assures such servant that he has exercised reasonable care in the selection of the servants with whom such servant is to labor in his new service into which he is ordered.

SAME.—*When Servant's Compliance with Master's Order Not Negligence.* —*Personal Injury.*—In such a case it is not contributory negligence \for the servant to obey the order of the master, unless the danger

The Cincinnati, Hamilton and Indianapolis Railroad Co. *v.* Madden.

in the new service into which the master has ordered him is so glaring that no prudent man would have entered into it.

From the Henry Circuit Court.

*R. D. Marshall* and *B. L. Smith*, for appellant.
*W. A. Cullen* and *U. D. Cole*, for appellee.

McCabe, J.—This was an action by the appellee against the appellant for a personal injury. The complaint was in three paragraphs, a demurrer to each of which was sustained as to the second, and overruled as to the first and third paragraphs; there was an answer by general denial, trial by jury, verdict for appellee, on which judgment was rendered over a motion for a new trial.

The errors assigned here, and not waived by failure to argue them in appellant's brief, are the overruling of the demurrer to the first and third paragraphs of the complaint, and the overruling of the motion for a new trial.

The material allegations of the first paragraph of the complaint are as follows: "That the plaintiff entered the service of said defendant as a track-hand, in 1868, and continued in said service over seventeen years to the 27th day of December, 1886; that throughout said period he served as section boss of section number eleven, and his duty, with the assistance of a gang of men who were under his control, consisted in caring for the track generally, cutting weeds, tamping ballast, watching for and removing impediments from the track, walking the track, putting in new ties, removing broken or worn rails, and any other labor required in the care and preservation of the track. Such were the duties for which he was hired and which he agreed to perform; that at the same time said defendant was managing, running and operating locomotive engines and cars of said defendant over and upon the railroad track of said defend-

ant; that plaintiff had nothing whatever to do with the management, running and operating said locomotive engines of said defendant, nor had he any right, power, or authority to give any orders or directions in reference to the running, managing, or operating of the locomotive engines, but that he was hired to, and he engaged to, perform only the ordinary duties of a section boss or employe in charge and control of the track or section number eleven of defendant's road; that on the 27th day of December, 1886, the defendant, by one H. Pierce, then acting in the capacity of supervisor of the division from Hamilton, O., to Indianapolis, Ind., of defendant's railroad, a servant of the defendant, and having full control and charge of said railroad in its care and repairs, with full control of all hands and men employed upon and in the care and repairs of the road, with power of discharge and employment, and having on said 27th day of December, 1886, full charge and control of a construction train running upon the road of defendant for the purposes of distributing steel rails upon the line thereof, the object being to lay the track anew with steel rails, directed and required and compelled the plaintiff to assist in unloading steel rails from the construction train aforesaid, such employment being then and there wholly different from, and outside of, the service he was employed to perform, and much more hazardous than the work ·he had engaged and promised to do;    *    *    *    that the engineer in charge of the engine hauling said train on said day, James Montgomery, was a careless, inexperienced, reckless, incompetent and untrustworthy engineer, and was known to be such by defendant when he was hired as an engineer by defendant, and long before plaintiff received his injuries said Montgomery was known to defendant to be an incompetent, reckless, careless, and untrustworthy engineer, and further· he might have been

The Cincinnati, Hamilton and Indianapolis Railroad Co. v. Madden.

known to defendant to be such an engineer by the exercise of ordinary care and attention in the operation of the railroad, said Montgomery having shown his incompetency, carelessness, recklessness and inexperience on many occasions prior to said day; that defendant did not exercise ordinary care and prudence in the employment of said engineer, and retained him in her service after she had notice of his said incompetency, and long after she might have known of such incompetency, by ordinary care and attention, and prior to plaintiff's injury; that plaintiff did not know, and had not the means to know, prior to said 27th day of December, 1886, of such incompetency; that the weather was very cold, and the season of the year entirely unfitted for the work of distributing steel rails; that the steel rails and car on which they were loaded were all covered with ice and snow, which added greatly to the hazard, peril, and hardship of the duty to be performed; that while so engaged, and wholly without fault or carelessness or negligence on his part, and while standing at the forward end of the car on which the steel rails were loaded, and while engaged in the act of turning the rails over, so that they could be taken hold of with tongs, suddenly, and without any warning by whistle or bell or voice, the train was jerked violently forward by the engineer James Montgomery; that plaintiff was thrown off his balance, but managed to throw one foot across on the side-board of the tender in such a way as to catch, when suddenly and without warning of whistle or bell or voice the engine was checked back by said Montgomery, and the plaintiff was again thrown off his balance and fell down under the train with both legs on the rail between the wheels of the forward truck; that he instantly, with all his power, endeavored to pull his legs from under the

car, but before he could succeed said engineer again jerked the train forward, and the wheel passed over plaintiff's left leg between the knee and foot, crushing and mangling the limb in such a manner that amputation was necessary, and amputation of his left leg below the knee was necessarily performed by the surgeons in charge;    *    *    *    that all of said acts of said engineer, in the management 'of said engine, were careless, reckless, unskillful and wholly incompetent; that said injury was inflicted on him wholly without fault or negligence on his part; that plaintiff was caused to suffer great pain and rendered a cripple for life, helpless and unable to earn a support for himself and family.''

The third paragraph is substantially the same, as appellant's counsel concede.    There are two respects in which the sufficiency of the complaint may be considered: One relating to appellant's negligence in employing an incompetent engineer with knowledge thereof, and retaining him, after notice of his negligence and incompetency, through which the alleged injury was brought about; and the other, the wrongful direction of appellant, through one of its employes, clothed with authority so to do, by which appellee was compelled to undertake the discharge of duties other and different and more dangerous than those he had agreed to perform, through which the injury was brought about.

These are elements of separate and distinct causes of action, though no question is made as to the propriety of uniting them in a single paragraph.

The appellant's counsel, in their brief, have confined their attack on the complaint to the last point above mentioned—namely, the act of ordering appellee into a more dangerous service than that he had agreed to perform. But if the paragraphs are each good and sufficient to

withstand a demurrer in regard to the alleged negligence in employing and retaining the engineer in service, with knowledge of his incompetency, then we need not inquire into the other question.

The case of *Lake Shore, etc., R. W. Co.* v. *Stupak*, 123 Ind. 210, was very much like this, and the complaint there, in regard to the negligence of the railway company in the employment of the engineer, was almost exactly like this, and at p. 222 this court said: ''It is true that the appellee and Pool, the engineer, were fellow-servants, and that ordinarily the master is not liable to his servant for an injury occasioned by the negligence of a fellow-servant. But it is equally well settled that the master is bound to employ none but careful servants knowingly, and that where he negligently employs a careless or negligent servant, or negligently keeps in his employment a negligent or careless servant, after notice of such carelessness or negligence, he is liable to one of his servants injured by the negligence or carelessness of such servant,'' citing in support thereof *Indiana Car Co.* v. *Parker*, 100 Ind. 181; *Bogard* v. *Louisville, etc., R. W. Co.*, 100 Ind. 491; *Robertson* v. *Terre Haute, etc., R. R. Co.*, 78 Ind. 77; *Capper* v. *Louisville, etc., R. W. Co.*, 103 Ind. 305; *Boyce* v. *Fitzpatrick*, 80 Ind. 526; *Brazil, etc., Coal Co.* v. *Cain*, 98 Ind. 282; *Indiana Mfg. Co.* v. *Millican*, 87 Ind. 87; *Ohio, etc., R. W. Co.* v. *Collarn*, 73 Ind. 261; *Indianapolis, etc., R. W. Co.* v. *Johnson*, 102 Ind. 352; *Pennsylvania Co.* v. *Roney*, 89 Ind. 453.

It is alleged that the engineer, Montgomery, was a careless, inexperienced, reckless, incompetent, and untrustworthy engineer, and was known to be such by the appellant when he was hired as an engineer by it, prior to appellee's injury, and that appellee was ignorant of that fact.

This statement of facts brings the case within the well

recognized exception to the general rule that the master is not liable for injuries to one of his servants resulting from the negligence of a fellow-servant, engaged with him in the same department of the master's service or business. See, also, *Lake Shore, etc., R. W. Co.* v. *Stupak*, 108 Ind. 1; *Indiana, etc., R. W. Co.* v. *Dailey*, 110 Ind. 75; *Spencer* v. *Ohio, etc., R. W. Co.*, 130 Ind. 181; *Rogers* v. *Leyden*, 127 Ind. 50.

In *Chicago, etc., R. W. Co.* v. *Harney*, 28 Ind. 28, the complaint, like the present, contained both elements of a cause of action, and though no question was made as to such union in a single paragraph, this court held the complaint good on both grounds. This court, in that case, said: "But in this case, it is alleged that the son was at the time not engaged in the service which he was hired to perform, nor indeed in a service which he or his father had consented that he should engage in, but, on the contrary, that he was 'compelled' by the fellow-servant to labor at a business much more perilous, and was injured while so engaged. There was then no opportunity to adjust the compensation with a view to the risk. There was no consent to perform the service on any terms. It was a compulsory service, and under such circumstances neither justice nor policy required that the master shall be acquitted of responsibility. Then, again, a master ought to be bound to all the world to employ none but competent and trustworthy servants, so far as reasonable care in their selection can accomplish that end; and if he fails in this, knowing the incompetency or carelessness of those whom he takes into his service, he ought to answer to his other servants for the consequences which may result to them. The master has no right, either moral or legal, to impose upon them, knowingly, a needless peril. * * * So then, for both reasons, the complaint was sufficient."

The acts charged against the engineer in the case at bar constituted negligence within the rule laid down in *Ohio, etc., R. W. Co.* v. *Collarn, supra.* We, therefore, hold that on both grounds the first and third paragraphs of the complaint each stated a good cause of action, and that the court did not err in overruling the demurrer thereto.

One of the grounds of the motion for a new trial is, that the evidence does not support the verdict. It is claimed, on behalf of the appellant, that the charge that the engineer was a negligent and incompetent servant, and that appellant had knowledge of that fact before appellee's injury was received, is refuted by the great weight of the testimony. It may be that what appears here as the preponderance of the evidence on that question is against the charge, and yet, according to the well established rule, it does not follow that the judgment must be reversed for that reason.

The jury and the trial court are the best judges of the weight of the evidence where there is a conflict in it, because they have vastly better opportunities and means of weighing and estimating the weight of conflicting evidence than this court has.

The judge of the trial court has just as good an opportunity and as efficient means of weighing the testimony as the jury has. And though the jury are the exclusive judges of the weight of the evidence, that only lasts until their verdict is returned and a motion for a new trial is filed in which is assigned as a reason therefor that the verdict is not supported by sufficient evidence. Then the trial judge becomes the judge of the weight of the evidence, and if, in his opinion, the preponderance of the evidence is against the verdict so strong that he should have felt compelled to have found the other way, the law makes it his duty to grant the motion for a new

trial.   While it is sometimes strongly asserted that trial judges, for want of courage, shrink from this plain duty, yet the legal presumption is that the trial judge has conscientiously, faithfully, and courageously discharged his whole duty, and that presumption continues on an appeal until the contrary is made to appear affirmatively by the record in this court.   Hence, the propriety of the rule in this court that affirms the verdict if the evidence that tends to support it, considered alone, is sufficient to justify the jury in finding it.

This court can not know but that the jury had good and sufficient reasons for discrediting the evidence that conflicted with their finding; and even if it were possible to suppose that the jury had made a mistake in weighing the evidence, the trial judge, we are bound to presume, has calmly and impartially reviewed it, after having heard it all, with the same means of observing the manner and appearance of the witnesses, and all other circumstances of the trial likely to aid in correctly weighing the evidence, and by his action in overruling the motion for a new trial, says in effect to us that he thinks the weight of the evidence justifies the verdict of the jury.

In this case, there was evidence tending to support the verdict, and from which the jury might fairly have drawn the inference that the charge against the engineer of unskillful and negligent conduct was true, and that the appellant knew of that fact long before the appellee's injury occurred.

But even if the evidence had failed to show that appellant knew of the unskillfulness and negligent habits of the engineer through whose misconduct appellee received the injury complained of, yet the other ground of appellee's complaint is sustained without any material conflict in the evidence.   He was employed and had served appellant over seventeen years as a section boss, the duties

The Cincinnati, Hamilton and Indianapolis Railroad Co. v. Madden.

of which required him to keep the track in repair, with a gang of men under his charge. He was ordered by the supervisor of the road, clothed with authority over appellee and his section men to hire and discharge, to help unload steel rails then being distributed along the road, with a view of relaying the track with such steel rails. This was entirely a different service from that he had contracted and agreed to perform, and was much more hazardous and dangerous than the duties he had hired and agreed to peform. He neither objected nor consented to perform the more hazardous service, but simply obeyed the order of his master's vice-principal; in other words, he obeyed his master and commenced to discharge the more dangerous duties. In the discharge of those new duties, through the unskillful and negligent conduct of the engineer in charge of the engine hauling the train, he was thrown therefrom onto the track, and his leg crushed by the wheel of the car running over it, so that it had to be amputated, and this without any fault or negligence on appellee's part, unless his obedience to the order of his master was negligence. See Wood on Master and Servant, section 439.

It has often been decided by this court that the risks and dangers ordinarily incident to the service which the servant has agreed, by his contract with his master, that he will perform, are assumed by the servant; and in contemplation of law the servant has agreed to run those risks, in consideration of which the rate of wages has been adjusted in the contract of hiring. *Chicago, etc., R. W. Co.* v. *Harney, supra; Rogers* v. *Leyden, supra; Pittsburgh, etc., R. W. Co.* v. *Adams,* 105 Ind. 151; *Louisville, etc., R. R. Co.* v. *Orr,* 84 Ind. 50.

But where the master has ordered him to perform service other than that embraced in the contract of hiring, a very different rule prevails. In that case there is

no implied agreement, as there is in the other, that the servant will take on himself the risks incident to that service. *Chicago, etc., R. W. Co.* v. *Harney, supra; Hill* v. *Gust,* 55 Ind. 45.

In *Pittsburgh, etc., R. W. Co.* v. *Adams, supra,* this court said: "As we have said, when, by the order of the master, the servant is carried beyond his employment, he is carried away from his implied undertaking to assume the risks incident to the employment. Hence it is, that when a servant is thus, by orders of the master, put at work outside of his employment, and is injured by reason of defective machinery, railroad track, etc., without his fault, the master is liable, regardless of the care he may have exercised to keep the machinery, railroad track, etc., in a safe condition. When a servant is thus ordered to work at a particular place, or with particular machinery, etc., outside of his employment, the master impliedly assures him, not only that he has exercised reasonable care to have the place, machinery, etc., in a safe condition, and fit for the business for which they are used." And we may add, in harmony with the principles thus announced, that the master, under such circumstances, impliedly assures the servant that he has also exercised reasonable care in the selection of the servants with whom such servant is to labor in the new service into which he is ordered by his master.

It is insisted that by obeying the order of his master and going into the new service he thereby assumes the increased risks and perils of the new service. That would be in direct conflict with the three cases last above cited.

The case last quoted from cites with approval *Chicago, etc., R. W. Co.* v. *Bayfield, Admx.,* 37 Mich. 205, where Cooley, J., speaking for the Supreme Court of Michigan, said: "The fact that Williams was under no obligation to

obey the order of Smith, is not in our opinion sufficient to sustain the first proposition. When one person engages in the employment of another, he undertakes to obey all lawful orders, and he subjects himself for any failure to do so, to the double liability of being expelled from the employment and of being required to pay damages. It is true the master had no right to direct him to do anything not contemplated in the employment, but when one thus contracts to submit himself to the orders of another, there must be some presumption that the orders he receives are lawful, the giving of the orders being of itself an assumption that they are lawful; and the servant who refused to obey would take upon himself the burden of showing a lawful reason for the refusal. This, of itself, is sufficient reason for excusing the servant who declines the responsibility in any case in which doubts can possibly exist. He should assume that the order is given in good faith and in the belief that it is rightful; and if in his own judgment it is unwarranted, it is not for the master to insist that the servant was in the wrong in not refusing obedience. Respect for the master as well as a consideration for his own interest may very properly induce him to waive his own judgment for that of his superior, and instead of engaging in disputes and being perhaps, ejected from his employment, to leave questions of doubt for future settlement.''

*Lalor* v. *Chicago, etc., R. R. Co.*, 52 Ill. 401, cited by this court with approval in the Adams case, is directly in point, and supports the principles announced by the Supreme Court of Michigan just quoted. So, also, does *Hill* v. *Gust, supra; Mann* v. *Oriental, etc., Works,* 11 R. I. 152; *Railroad Co.* v. *Fort,* 17 Wall. 553.

To obey the master's order in this case was not contributory negligence, therefore, unless the danger and peril to life and limb in the new service into which ap-

pellee was ordered was so glaring that "no prudent man would have entered into it, even where, like the servant, he was not entirely free to choose." *Stephens* v. *Hannibal, etc., R. R. Co.* (Mo. Sup. Ct.), 9 S. W. Rep. 589; 2 Thomp. Neg. 975, section 5.

Mere knowledge that the new service was dangerous, and even more dangerous than the old, is not sufficient to charge the servant with contributory negligence, or an implied agreement to assume the risks thereof. *Rogers* v. *Leyden, supra; Ohio, etc., R. W. Co.* v. *Trowbridge*, 126 Ind. 391; *Murphy* v. *City of Indianapolis*, 83 Ind. 76.

It is objected that most of the cases holding the master liable for injuries sustained by his servant on account of the increased dangers of the new service into which he has ordered him, have been cases where the servant was a minor, and of tender years and lack of discretion.

It is true the minority of the servant, especially where he is so young as to be greatly wanting in experience and discretion, so that it would require a more glaring danger to charge him with contributory negligence in obeying the orders of his master, and stronger circumstances from which an implied agreement on his part would arise to assume the new risks; otherwise the principle is the same whether the servant be an adult or an infant. The dangers of the new employment into which appellant was ordered did not consist alone, or mainly, of the snow and ice on the cars and steel rails to be unloaded, which he could see and know, but it consisted in handling and unloading them from the cars as well, and the action of the engineer in moving the train, and starting and stopping it frequently. Such a danger was not, in our opinion, so glaring that no prudent man would have obeyed the order to perform the same. Nor do we think that there was anything in the circumstances disclosed in the evidence from which it can fairly be implied that appel-

lee agreed to assume the dangers incident to the new service. However, both questions were questions of fact for the determination of the jury, and we see no reason to believe that the jury did not decide both questions in accordance with all the evidence.

The only other ground of the motion for a new trial urged in argument is that the court erred in giving instruction numbered seven. The motion reads thus: "Error * * in giving charges numbered one, two, three, four, five, six, seven, and eight." The correctness of the other seven instructions is not questioned here, and we see no objection to them. It has been held by this court that such an assignment of error, in a motion for a new trial, can only be sustained by showing that the instructions are all bad. *Ohio, etc., R. W. Co.* v. *McCartney*, 121 Ind. 385; *Pennsylvania Co.* v. *Sears* (Ind.), 34 N. E. Rep. 15.

We find no error in the record.

The judgment is affirmed.

