Gavin, J.
Action by the servant against the master to recover damages for personal injuries received by falling through a hole in a third story floor, covered over with rotten canvass.
-Appellee was a common laborer employed in other portions of appellant’s grounds and mill. About two o’clock on the morning of June 5th, he went to this third *111 floor and, pursuant to his master’s directions, was engaged in carrying boards on a plank walk laid across a hole eighteen feet by twenty-eight, which was covered over with rotten canvass so as to completely conceal the hole. While so engaged, appellee was, without his fault, jostled and knocked off the plank walk, and thrown upon the canvass, which gave way and let him fall twenty-eight feet to the ground, inflicting serious injuries upon him without any fault or negligence upon his part.
The existence of the opening and the rotten condition of the canvass were known to the appellant and unknown to the appellee, who was set to work without any warning as to the dangerous conditions under which he was working. These are, briefly stated, the principal facts set forth in the complaint, so far as they are requisite to this decision.
While the averment of want of knowledge “at and before the 5th day of June, 1892,” may not be the best and most accurately chosen language to express the meaning of the pleader, we regard it as clear that the word “at” is used for “on.” No one could be misled as to the idea intended to be expressed. Indiana, etc., R. W. Co. v. Daily, 110 Ind. 75.
Counsel argue with much ingenuity that the appellee must be held to have had knowledge of the hole and its condition. The facts pleaded are not strong enough to justify us in so holding in the face of the direct averment of want of knowledge.
It is further contended that the averments of the complaint do not show the officers named as acting for the appellant to have been vice principals, and the position seems to be taken that the corporation is responsible only for the acts of its directors. The law must be regarded as settled in Indiana that it is the duty of the master to use reasonable care to provide a safe working place for *112 Lis employes. Evansville, etc., R. R. Co. v. Holcomb, 9 Ind. App. 198, and cases cited; Evansville, etc., R. W. Co. v. Duel, 134 Ind. 156; Nall, Admx., v. Louisville, etc., R. W. Co., 129 Ind. 260.
This duty is one which can not be, by the master, delegated to any other servant or agent, whether of high degree or low, so as to absolve the master himself from liability for its nonperformance. Evansville, etc., R. W. Co. v. Holcomb, supra, where numerous authorities are collated.
Under the averments, the danger encountered by appellee was known to the appellant and unknown to the appellee. It was, therefore, incumbent upon the appellant to notify him of such danger. Salem Stone, etc., Co. v. Griffin, 139 Ind. 141.
It must be borne in mind, however, that the averment of want of knowledge includes not only actual but constructive knowledge. Parke County Coal Co. v. Barth, 5 Ind. App. 159; Lake Erie, etc., R. R. Co. v. McHenry, 10 Ind. App. 525; Evansville, etc., R. W. Co. v. Duel, supra; Heltonville Mfg. Co. v. Fields, 138 Ind. 58.
In our opinion the complaint is not liable to the objections urged against it. It -is, however, peculiar in that there is no direct allegation of any act being negligently done or omitted by the master. No objection is made to the complaint upon this score, but it is certainly safer .in actions of this class to characterize the acts or omissions as negligent by direct averment. Louisville, etc., R. W. Co. v. Hicks, 39 N. E. Rep. 767.
•There was a special verdict upon which judgment was rendered in favor of appellee.
There is no want of harmony between the theory of the complaint and the facts as found by the jury.
While there are some facts which indicate that appellee had knowledge .of the hole in the floor, still they can not *113 override the express finding that he had no knowledge whatever of its existence.
The verdict sufficiently shows that the'appellant was negligent in setting appellee to work over a dangerous chasm, insecurely covered with a rotten canvass, without giving him any warning of the danger. Morever we regard it as clear that it was negligence upon the part of appellant to have in the third floor of its building, where men were set to work, a hole nine feet by twenty-eight, covered over with rotten canvass, without, any guard ■about it or any warning to its employes of its existence.
The appellee was justified in obeying the orders of the superintendent and the night boss, who had charge of appellant’s business. They were clearly his superiors, with .authority to direct his movements about the factory. He can not be held guilty of negligence in failing to make the plank walk across the canvass wider when he was in utter ignorance of the opening under the canvass. There could be no negligence in failing to guard against something whose existence he had no reason to suspect. In addition to this the verdict finds that the foreman or night superintendent directed the use of two planks, and these were used.
We can not accede to counsel’s proposition that the measure of the duty of appellant with reference to keeping safe the working place was to provide competent men and proper materials to work with. The authority cited, Wood, on Master & Servant, section 452, shows that while some courts so hold, this is not the general rule, and in Indiana those authorities to which we have already referred declare the contrary.
We can not sustain the objections to the special verdict.
The sufficiency of the evidence to support the verdict is also assigned as error.
*114 In the verdict it is found that appellee had no knowledge of the existence of the hole in the floor, but it is not found that he was ignorant of the rotten condition of the canvass covering it.
Conceding it to be true that he had no actual knowledge of the existence of the hole in the floor, his own evidence is of such a character as irresistibly compels the belief that the facts were such that he ought to have known it, and must be held chargeable with constructive knowledge at least.
It appears from his own evidence that he went, by his superior’s direction, to this third floor about 2 a. m. to help tear down and move a chip bin.
The room was a large one. Near the bin, which was to be torn down, there appeared, spread upon the floor, a large canvass, nine feet or more by twenty-eight. The superintendent told appellee and another workman to-lay two plank across there to walk over. The other-workman- walked around (not across) the canvass to the other side. Appellee then took a long two-inch plank, from twelve to sixteen inches wide, and shoved it across the canvas to his fellow-workman, who put it upon the floor on the other side. He then placed the end of another plank upon the first one and shoved it across. The room was poorly lighted with natural gas. The two men then carried the long boards across the hole, walking on this plank gangway.
We now set out in detail a number of the questions and answers by appellee, which, in our judgment, charge him conclusively with constructive knowledge that there was a hole under this canvass, and that it was not a solid floor. We can not set out all of his evidence, but only detached parts of it bearing upon this proposition.
“Q,. What knowledge did you have of this third floor *115 on. the night that you went up there? A. None at all, sir.
“Q,. What was the appearance of the floor up there when you went up? A. Well, it looked to me like it would hold a person up.
“Q,. You may state to the jury what knowledge you had of the condition of the floor or the sheeting that was over the hole at the time you were carrying the hoard across when you fell through. A. I didn’t know how it was fixed; all I could see was the canvas over it.
“Q,. How did you put them (the boards to walk on) in position? A. I slipped my end on the canvas, right over to him, and he put it up on the floor on the other side.
“Q,. What did you lay one on the top of the other for? A. I was afraid one of them would break.
“Q. Why didn’t you put down more? A. I thought that would hold us, and that was all that Pat told us to put down.
“Q. Now, if there was any reason why you did not lay down more boards there, tell the' jury. A. Well, I didn’t think of any danger; seeing that canvas there I thought that was put there a purpose to catch a person if they stepped onto it.
“Q,. Why did you put any hoards down there, then, if you could step and walk on that? A. Because it would spring down with us.
“Q. What did you step on it afterwards for? A. I couldn’t help myself.
“Q. You knew it was a dangerous place, didn’t you? A. No sir, I did not.
“Q. Why did you put the boards down? A. Because, as I told you before, the canvas would give down with us and we couldn’t get up on the other side.
“Q,. Can you give any reason why you didn’t pick up *116 the end of it (the board) and walk across that (the canvas)? A. Anyone would suppose there was something there or they wouldn’t have the canvas there.
“Q. Now, when you pushed that board across there on that piece of canvas, couldn’t you see that the canvas sagged under the end of your board that you were pushing across? A. It swagged some; yes, sir.
“Q,. Didn’t that teach you, a man of your intelligence, that there was no floor under there? A. I didn’t know how far it was to the floor.
“Q,. You knew that it sagged? A. Yes, sir.”
Appellee was under no obligation to search for hidden defects unless the facts were such as to necessarily convey to his mind, or to the mind of a reasonable man, tíre presence of such defect, but when it appears that appellee entered this third floor of a pulp mill and found a canvas stretched down on it, was ordered to lay planks across there to walk on, saw his fellow-workman walk around it and not across it, shoved a plank over it, saw it sag down, placed one board on top of another lest one should break, thought the canvas was put there to catch a person if he should step on it, we are of opinion that there is no escape from the conclusion that if he didn’t know there was a hole under the canvas he ought to have known it. 'While he had a right to presume that the master had performed his duty and provided a safe working place for him, still he could not be permitted to blindly rely upon this presumption to the utter disregard of the plain and palpable evidence of his own senses.
If the verdict had found that he had no knowledge of the rotten condition of the canvas, we might still sustain the judgment of the court, or if the facts found showed such a degree of care by appellee as was commensurate with his knowledge of the danger he was encountering, the conclusion of the court might still be upheld, upon *117 the theory that, having been directed to a different work at a different place from that of his regular employment, he did not, by reason of his knowledge, assume the risks even of the known danger, but might recover upon proof of proper care upon the principle laid down in Brazil, etc., Coal Co. v. Hoodlet, 129 Ind. 327; Louisville, etc., R. W. Co. v. Hanning, Admr., 131 Ind. 528; Cincinnati, etc., R. R. Co. v. Madden, 134 Ind. 462.
The finding as to the care exercised by appellee is exceedingly meager and entirely insufficient to enable us to say that he was exercising proper care when held chargeable with knowledge of the hole and the condition of the canvas.
Since we are compelled to hold that the appellee ought, in the exercise of reasonable care, to have known there was a hole in the floor, he must in law be deemed to have had actual knowledge thereof. Lake Erie, etc., R. W. Co. v. McHenry, supra; Evansville, etc., R. W. Co. v. Duel, supra; Pittsburgh, etc., R. W. Co. v. Woodward, 9 Ind. App. 169.
The verdict is, therefore, as to this essential feature of knowledge unsustained.
In thus holding we have not lost sight of the established rule that this court will not undertake to solve the doubts arising from a conflict of evidence. But, with this rule fully in mind, we are unable to discover any conflict upon the proposition on which the case has turned.
The evidence of repairs made after the accident was not admissible. Terre Haute, etc., R. W. Co. v. Clem, 123 Ind. 15; Board, etc., v. Pearson, 129 Ind. 456.
We are unable to'regard it, as viewed by appellee’s counsel, as so interwoven with other competent evidence of the witnesses as to be inseparable from it. Whether or not the principal question as to this evidence is prop *118 erly saved is quite doubtful. We do not, therefore, found the reversal upon these rulings.
Filed Nov. 2, 1894.
The judgment is reversed, with instructions to grant a new trial with leave to amend the complaint if desired.
Lotz, C. J., did not participate.