ORMAN ET AL. v. MANNIX.

1. FORMAL OBJECTIONS TO COMPLAINT MUST BE MADE IN TRIAL COURT. —All mere technical or formal objections to a complaint must be made by motion or demurrer before trial. If not so raised, they will be deemed waived.

2. PLEADING—DAMAGES.—In an action by plaintiff to recover damages sustained by reason of the death of his minor son occasioned by the negligence of the defendants, a general allegation of damage is sufficient to permit the recovery of such damages as are naturally and usually incident to the death.

3. EMPLOYEE, ASSUMPTION OF RISK BY.—One engaging in the service of another assumes, as between himself and his employer, all the ordinary and usual risks incident to the business upon which he is about to enter.

4. EMPLOYER—DUTY OF.—The master is required to exercise ordinary care, skill and prudence in furnishing machinery and appliances suitable to the work in which his employees are engaged, and to exercise like care and caution in the employment of competent fellow servants and the selection of assistants to control the work, when it is put in charge of others.

5. EMPLOYER—LIABILITY OF.—If a boy fourteen or fifteen years of age employed in non-hazardous service, is placed by his employer under the control of a foreman, and if such foreman orders him to perform an act in its nature perilous and which is outside the duties of the boy, but within the scope of the employment and duty of the foreman, and if in the attempt to obey such order the boy is killed, his employer is liable in damages. The fact that the boy would have been justified in disobeying the order will not exonerate his employer.

*Appeal from District Court of Lake County.*

APPELLEE, Patrick Mannix, brought this action to recover damages for the death of his son William, a minor fourteen years of age. The injury causing death is alleged to have resulted from the negligence of appellants, J. B. Orman *et al.*, in whose employ the deceased was at the time. They were copartners engaged in the business of contracting and building railroads. And were at the time employed in grading and constructing a portion of the Colorado Midland Railway Company's road-bed.

In doing this work, appellants had in their employ a large number of laborers and employees engaged in various duties incident to the work. The superintendent of the work for them was one James Ford. Ford had charge of the men and work and was termed " a walking boss." The number of men employed varied from 50 to 200. At this time there were about 75 distributed over a distance of about half a mile along the grade. There were four gang bosses having the supervision of this work under Ford. Among other duties the gang bosses were to look after the work and prepare the

powder for use. As to whether or not they were authorized to hire the men under them is involved in much dispute under the evidence; that Riley, in charge of the gang at the place of the accident had the power to discharge the men, is expressly admitted.

The deceased was, at the time of the accident, and for some time prior thereto had been, in the employ of the defendants.

It is admitted that by the terms of his employment the only services required of him were to carry water to the men and to carry the tools used by them to the blacksmith shop of the defendants to be repaired and sharpened, and return the same. In the grading it was necessary to do a large amount of blasting, and for this purpose giant powder was used. It was the exclusive and personal duty of Riley, the gang boss, among other things, to take charge and prepare for use all the powder used in and about the work over which he had charge. In the mountains where this work was being done, it frequently happened that the giant powder became frozen even as late as the month of May. The powder when frozen was unfit for use and it was the duty of Riley, among other things, to thaw the powder preparatory to using the same. As the defendants had furnished no appliances for thawing this frozen powder, it was the practice to thaw it before an open fire.

Upon the day of the accident, which resulted in young Mannix' death, it became necessary for Riley to use a large quantity of this frozen powder. For the purpose of thawing it he built a fire about 120 feet from where the men were working and 60 feet from a huge boulder which he was about to blast. The fire being started, Riley laid about 75 sticks of giant powder against a log in front of the fire. As the powder became warm on the side nearest the fire he would turn the sticks of powder for the purpose of thawing them evenly, and as they became sufficiently warm he laid them near the fire in a pile ready for use. While this work was in progress, young Mannix came along with some steel from the shop, and stopped at the fire to warm. In a few minutes

he commenced handling the sticks of giant powder, but whether or not he was ordered to do this by Riley is left in doubt under the evidence. Soon after Mannix came to the fire Riley picked up about 40 sticks of powder and carried them in his arms to the boulder,—leaving about four or five sticks which he ordered young Mannix to carry down to the boulder. When they had reached the boulder Riley commenced putting the powder in the hole drilled for that purpose. He had placed 7 or 8 sticks in the boulder when some one near by called out: " The powder is on fire; the powder at the fire thawing."

Between where Riley was standing at the time and the fire there was a pile of brush and logs which partly obscured the fire from his vision. He saw, however, a peculiar blaze which, with his knowledge of powder, convinced him that some of the powder left at the fire was burning and he said to deceased, "Billy, run and throw that stick away," meaning the stick of powder that was on fire. Upon receiving this command, the boy jumped and ran towards the fire. In three or four seconds after this the explosion took place which resulted in the death of the boy. Whether he had reached the fire at this time is not clear from the testimony. As soon as the smoke from the explosion had cleared away his lifeless body was found 12 or 14 feet from where the fire had been the instant before. A jury trial resulted in the verdict and judgment for plaintiff.

Mr. J. E. HAVENS, for appellants.

Mr. T. A. DICKSON and Mr. S. D. WALLING, for appellee.

CHIEF JUSTICE HAYT delivered the opinion of the court.

The first assignment of error discussed by counsel relates to the sufficiency of the complaint. This question was not raised, however, in any way prior to the trial. The complaint certainly states facts sufficient to constitute a cause of action.

A practice which would allow the raising of other objections to a pleading at the trial is not to be encouraged. Cases should be conducted in court with the least possible expense and annoyance to litigants consistent with the proper administration of justice. The Civil Code requires all mere technical or formal objections to be raised by motion or demurrer before trial. If not so raised they are to be deemed as waived. To wait until witnesses have been subpœnaed and the cause reached for trial before raising such objection would be to entail a needless expense upon litigants as well as subject to unnecessary annoyance the court, witnesses and jurors.

The claim in this case is that certain allegations in the complaint are so vague and indefinite and so interwoven with recitals as to render the entire pleading objectionable. If the pleading is properly open to this criticism and the defendants desired to have these allegations made more specific and definite, they might have filed a motion for that purpose, or a demurrer could have been interposed. The objection not having been taken by motion or demurrer, it cannot be considered in this court.

The additional claim that no recovery can be had in this case, because the allegation of plaintiff's damages is general and not special, is not well founded. The complaint avers the relationship of the plaintiff and the deceased, the latter's age at the time of his death, his occupation, and the amount of his daily earnings, the employment by the defendants and the facts and circumstances of his death, as the result of the defendants' negligence, concluding with an averment of damages to the plaintiff in the sum of $5,000. This is sufficient to permit the recovery of such damages as naturally and usually flow from the death, and these only are here claimed. *Tucker v. Parks*, 7 Colo. 62; *City of Pueblo v. Griffin*, 10 Colo. 366.

It is charged that the death of young Mannix resulted from the negligence of the defendants. The acts and omissions charged as constituting such actionable negligence may

be briefly summarized as follows : First. Failure to provide some suitable appliance for use in thawing when frozen the explosive used in blasting. Second. In ordering deceased, a lad of fourteen years, to do an act not within the scope of his employment and extra hazardous in its nature.

We will be aided in solving the questions thus raised by having in mind the following principles of law applicable to the relations of master and servant. When one engages in the service of another, he assumes as between himself and his employer all the ordinary and usual risks incident to the business upon which he is about to enter.

The law imposes upon the master the duty of exercising ordinary care, skill and prudence in furnishing machinery and appliances suitable for doing the work in hand, and the exercise of like care and caution in employing competent fellow servants, and where others are given charge of the whole or a portion of the work, the master is required to use reasonable care and caution in the selection of competent assistants for such positions.

In this case it is earnestly contended that the defendants were chargeable with gross negligence in failing to provide some suitable appliance for thawing the powder when frozen. A number of witnesses were introduced who testified that thawing such powder by an open fire was attended with unusual hazard and danger. It appears from the testimony of these witnesses that giant powder is composed of nitro-glycerine and an absorbent of different materials.

In the opinion of these witnesses such explosive compound is liable to ignition and explosion from sparks from an open fire. It is further in evidence that it cannot be properly thawed in this way, for the reason that the heat could not be evenly applied to the powder and thus the practice of thawing powder in this way was attended with great danger. It is in evidence that there is an appliance in ordinary and general use for thawing such powder, consisting of one vessel or tank inside of another with space between in which to put water. The powder being placed in the inside tank so

that the heat of the water will gradually thaw it. In the opinion of such witnesses there is little, if any, danger attended upon thawing powder in this manner. A number of witnesses testified, however, that such an appliance was not in general use, and a few that it afforded but slight protection from the danger consequent upon handling so high an explosive, and that it was quite customary to thaw such powder before an open fire. It is said by these witnesses that such powder is exploded by a jar or concussion rather than by heat, and consequently thawing by an open fire in the opinion of these witnesses is not attended by unusual hazard.

In this conflict in the testimony, it was the province of the jury to determine under proper instructions upon which side lay the greater weight. The instructions 'upon this point given by the able judge presiding at the trial are full and complete and free from substantial error.

Finding the evidence amply sufficient to sustain a recovery thereunder, the judgment cannot be disturbed unless because of some other error occurring at the trial.

Such error is assigned upon the fifth instruction. In this they were instructed in substance that: As a general rule a person entering into the employ of another is held to assume the ordinary risks incident to the service for which he is employed, including the risk of injury occasioned by the negligence of his fellow servants. But if a boy fourteen or fifteen years of age is engaged to work for his employer in a non-hazardous service or occupation and is placed by his employer under the control and subject to the orders and direction of a gang boss or foreman, and if such gang boss or foreman order him to do a thing which is in its nature perilous or hazardous to life or limb and which is outside of the duties and employment of the boy, but within the scope of the employment and duties of the gang boss, and in attempt to perform such perilous and hazardous act in obedience to such order the boy is thereby killed, then the giving of such order by the foreman or gang boss is negligence, and in such case the

negligence of the gang boss would be the negligence of the employer.

We think this instruction states the law correctly. The principles announced have received the sanction of many courts. And the instruction itself closely follows the opinion of the supreme court of the United States in *R. R. Co. v. Fort*, 17 Wall. 553. See, also, *Chicago & N. W. Ry. Co. v. Bayfield*, 37 Mich. 205; *Chicago & G. E. Ry. Co. v. Harney*, 28 Ind. 28; *Gilmore v. N. Pac. Ry. Co.*, 18 Fed. Rep. 866; *Broderick v. Detroit U. Depot Co.*, 56 Mich. 261; *Mann v. Oriental Print Works*, 11 R. I. 152; *Little Miami R. R. Co. v. Stevens*, 20 Ohio, 415; *Crisell v. R. R. Co.*, 30 W. Va. 798; Shearman & Redfield on Neg. (3d ed.) sec. 103; Cooley on Torts (2d ed.) pp. 655 *et seq.;* Lawson on Rights, Remedies & Practice, sec. 321.

In the case of *Railroad Co. v. Fort, supra,* the suit was brought by the father to recover damages for an injury to his sixteen year old son. The injuries were received while the son was in the employ of the railroad company in one of its machine shops as a workman or laborer. This shop was under the superintendence of one Collett. Previous to the accident, the boy had been chiefly engaged in receiving mouldings from a moulding machine, and putting them away. After he had been engaged in this service a few months, Collett ordered him to ascend a ladder to a great height from the floor among dangerous machinery revolving at the rate of 175 to 200 revolutions per minute; for the purpose of adjusting a belt which was out of place. While executing this order, the boy was caught in the revolving machinery, receiving an injury from which he lost his arm. The case was originally tried before Judge Dillon and a jury. In instructing the jury this able jurist drew a distinction between the liability of the employer in cases where the workman was performing services within the scope of his employment and the case where the injury occurred where the workman was performing services outside of the scope of such employment by direction of one placed in authority over him by the company.

A recovery was had in the court below and sustained upon appeal. In the case of *Chicago & N. W. Ry Co. v. Bayfield, supra*, the superintendent of a construction train ordered a boy of seventeen or eighteen years of age—who appears to have been engaged as a common laborer—to go back to the rear end of the train and help stop the train. On his way back in obedience to this order he fell between the cars and was injured, for which injury he recovered judgment, although the boy had repeatedly performed a similar service upon previous occasions by the direction of the superintendent. The opinion upon appeal was rendered by Chief Justice Cooley, and a recovery was sustained upon the principle that if the master wrongfully sends a servant in a dangerous place or exposes him to a risk not connected with the services, in consequence of which he is injured, the master is responsible. And that if instead of being sent by the master he is sent by one whom the master has placed in authority over him and to whose orders he is subjected, the responsibility of the master is the same. This decision is quoted with approval in the eminent jurist's last edition of his work on Torts. See Cooley on Torts (2d ed.), pp. 656, 657.

In *Gilmore v. Northern Pac. Ry Co., supra*, the action was brought against the railway company by the plaintiff to recover damages for bodily injuries sustained by him while in the employ of defendant as a laborer in the construction of its railway. The injury in that case resulted, as in this, from the explosion of a quantity of giant powder in an attempt to thaw the same by an open fire.

The defendant had in its employ many gangs of men, numbering not less than 50 each, working at various points on its line under the direction of a foreman or local boss, having the power to employ and discharge men, but subject to a general superintendent, who from time to time passed along the lines and gave the gang boss instructions with reference to the work. These gangs were accustomed to use giant powder in blasting. This powder was under the immediate supervision and control of the gang boss, whose duty it was to

prepare the same for use when required. For the purpose of thawing such powder the defendant had supplied heaters subject to requisition by the gang bosses.

No such heater, however, had been supplied to the gang of which the plaintiff was a member, it being the custom of the foreman of this gang to thaw the powder by an open fire, calling to his assistance for that purpose one of the workmen. It was shown upon the trial that the superintendent knew of the danger of thawing powder in this way and had given a general notice not to do it. The plaintiff was injured while assisting in so thawing powder by direction of the local boss, and it was held that for this purpose the local boss stood in the place of the defendant, and that his neglect in failing to procure and use a suitable appliance for thawing the powder was the negligence of the defendant.

It was further held that a direction from him to the plaintiff to assist in thawing the powder at an open fire was, under the circumstances, the direction of the company and for which it was liable.

* In opposition to the foregoing opinions the case of *Murphy v. Smith*, 115 Eng. Com. Law Rep., p. 360, is frequently cited. Here the defendants were the proprietors of a match factory, the superintendent of which was one Simlack. Under Simlack there was a workman named Debour, who, in Simlack's absence, assumed the management of the establishment. In the manufacture of lucifer matches, as at that time conducted, a dangerous mixture was compounded in which the ends of the matches were dipped. In the compounding of this mixture, care was required in stirring it, otherwise an explosion was likely to take place. It was no part of plaintiff's duty to stir the compound. On the day in question he did, however, stir it, and the compound exploded causing the injury complained of. The evidence shows that Debour was standing by at the time; but it did not appear that plaintiff was acting under his direction in stirring the mixture, and there was no evidence to show that Simlack, the general manager, was not in the factory at the time, and

hence it did not appear that plaintiff was even subject to the directions of Debour.

The case was submitted to a jury and special findings returned. By these findings it appeared that in the opinion of the jury the injury occurred as the result of Debour's negligence and that he was at the time acting as the manager of the establishment. A verdict for 20 pounds was returned for plaintiff. Upon appeal it was held that the evidence was not sufficient to sustain the finding that Debour was acting as general manager at the time, and that it could not, therefore, be fairly considered that he was then acting as the representative of the defendants; consequently it was held that the plaintiff could not recover.

An examination of the case discloses that it is in no way in conflict with the general rule upon the subject. A reading of the several opinions of the judges sitting in review leaves no doubt that if the plaintiff was under the direction or control of Debour and acting under his orders at the time, the recovery would have been sustained.

In the case at bar it is expressly admitted in the pleadings that Riley, the local or gang boss, for the defendants, had the entire direction and control of a division or gang of men working at the place of the accident, with power to discharge the men under him at his pleasure. It is also admitted likewise in the pleadings that Riley had the entire charge of the giant powder used at that point, and that it was his duty to thaw the same when necessary. The evidence shows that for the purpose of thawing the powder he had authority to call to his assistance such laborers as he required. It is admitted that the thawing of this powder was entirely beyond the scope of young Mannix' employment. Under these circumstances, we think that the act of Riley in ordering Mannix to handle this dangerous explosive was the act of the company. No doubt, the boy would have been justified in disobeying this order, but this fact will not exonerate the defendants. The deceased had a right to rely to some extent upon the superior skill and knowledge of the man put

by them in charge of the work at that point. It would be unreasonable and unwarranted to require that a workman under such circumstances should be required to weigh nicely the question as to whether or not the order was one which the foreman had a right to give.

If young Mannix had been a man of mature years, familiar with the dangers attendant upon handling giant powder, it might with some propriety be urged that in obeying such an order he was guilty of such contributory negligence as would bar a recovery. This cannot be urged against a mere boy of tender years, who is not shown to have had any information with reference to the dangerous nature of the business upon which he was ordered by his superior. Moreover, the question of negligence and the correlative question of contributory negligence were fairly submitted to the jury under proper instructions, and both issues decided against the defendants.

The deceased is shown to have been an active boy, diligent in serving his employers' interests, obedient to all the commands of his superiors. He was ordered to act in an emergency. This order was by a superior whom it was his general duty to obey. The deceased had neither time for the close weighing of chances, nor the opportunity to fully comprehend the danger of the service upon which he was dispatched. It is in evidence from some of the defendants' witnesses that giant powder might be warmed at an open fire without unusual risk; that, in fact, it would sometimes take fire and burn up without exploding. Under these circumstances, it should not be a matter of surprise that the jury found that deceased was not properly chargeable with contributory negligence.

Among the instructions given to the jury were embodied the statutes under which the action was being prosecuted. There was no error in this, particularly as the jury were properly informed as to the measure of damages in case the right of recovery should be sustained. The instruction upon this point having been prepared by the defendants' counsel and given at their request. For the correct rule of damages

in this class of cases and full discussion of the statute, see *Moffatt v. Tenney, ante* p. 189; *Hayes v. Williams, ante* p. 465. Some of the instructions given at the request of plaintiff were neither numbered nor signed, and error to the giving of such instructions is assigned on account of the omissions. Although the court in its discretion might have refused to consider such requests to instruct, it was not required to do so. When given they became the instructions of the court and might have been given upon its own motion. The instructions being correct as a matter of law, the failure of counsel to either number or sign them furnishes no ground for reversal.

The case appears to have been tried with more than usual care, and we see no reason for interfering with the judgment. It is therefore affirmed.

*Affirmed.*