Bissell, P. J.,
delivered the opinion of the court.
William Sharp was killed in a shaft of the Mollie Gibson mine on the 15th of February, 1892. His father, the appellee, brought suit under what is generally known as the damage act of 1877 against the company. He got judgment for fifteen hundred dollars, and the company prosecutes this appeal. The complaint stated the relationship of the father and son, the decedent’s age and that of his father, his general condition, the circumstances of William’s death, the facts on which they predicated the liability of the company, and averred generally the damages sustained. The shaft was known as No. 2. It was two hundred and fifty feet deep to the fourth level, and ran some distance below. What killed the miner is called an accident. This word does not describe it. It more nearly approaches a crime. Some two or three weeks before William was killed, the company started to enlarge the shaft. Below the fourth level it was a three compartment shaft, 4x12. Above that point it was 4x8, and the work was begun to make the size uniform to the surface. Some work was done at the fourth level. The company then begun at the top to enlarge it downwards. When they commenced, they.put in plates across the shaft, took out sections of the cribbing, and blasted out a bench four feet long for the purposes of the extension, putting the dirt and rock which was blasted out on the plate, and hoisting it afterwards to the surface. This was continued but a short time. The company then put in a bulkhead of 8X 8 timbers some fifteen feet above the fourth level, shoveled and blasted the dirt from the bench into the shaft and on to the bulkhead. This continued until about the 15th of February, at which time the shaft had been filled up some seventy-five or eighty feet above the bulkhead with dirt cut out in making the enlargment. At this time it was usual to put a shift of men into the shaft, who would shovel up and send to the surface in the bucket some of the dirt that had already been thrown into the shaft, remove the *323 cribbing and continue the extension. Several shifts were at work, and, at the date named, William Sharp and his companions were employed on what is well termed among miners “ the graveyard shift,” from midnight on to the morning. The shift was composed of four men — Eggers, Capíes, Sharp and Bailey. On the Thursday preceding the 15th, the superintendent and his assistant ordered the bulkhead which supported the column of dirt to be taken out. The foreman knew it had been cut. Prior to this time, considerable dirt had been dug out at that point, that it might be run into the fourth level, for convenient removal through other openings in the mine. The dirt, of course, had become impacted and somewhat solid in the shaft, and was not easily removable in that way. On Sunday, the superintendent directed a stream of water to be turned into the dirt to loosen it. Just how long this water ran, the foreman does not state, if he knew, except as he puts it — it was continued until the water percolated through the column and showed at the bottom. On the midnight of Sunday these facts existed, and the shift of four men were lowered to their death. No man told them that the bulkhead had been removed, and no man said that the water had been turned in to loosen the earth. In less than two hours from the time they started work, the column of earth commenced to move downwards, and Eggers, Capíes and Sharp were borne into the pit below, covered with earth and killed. By one of those fortuitous circumstances which no man can explain, Bailey leaped for his life, caught on the cribbing and escaped in the bucket.
Unless some insuperable legal difficulty prevents the affirmance of this judgment, it should be permitted to stand, and we feel that the court would be entirely justified in being astute to find reasons for the- affirmance of the judgment. The company vigorously resists its enforcement, and has urged all conceivable reasons for its reversal. No attempt will be made to analyze or consider all the objections contained in the very voluminous brief filed on behalf of the com *324 pany, and. only those will be noticed which present some possible difficulty.
It is elaborately argued that the act of 1877 is unconstitutional, because the title contains more than one subject, and all matters to which it relates are not clearly expressed in it. There are two reasons why this court will not enter upon an exhaustive discussion of this constitutional question. The final determination of constitutional questions is not left to this tribunal, and the matter has been so thoroughly settled and the law so exhaustively declared in many cases by the supreme court as to remove the matter from the domain of discussion. Numberless suits have been brought under the act, carried to judgment, taken to the supreme court, and there affirmed. The act has been before that court many times, and they have universally treated it as constitutional, and we may confidently assume, if the matter had been open to question, it would somewhere and at some time have been the subject of argument and discussion by that court. The particular constitutional provision cited (article 5, see. 21, Constitution of Colorado) has been repeatedly construed, and the trend of the decisions very clearly indicates the opinion of that court concerning the scope and force of the section. The expressed doctrine is that a general title, broad enough to include all appropriate matters, will be deemed a full compliance with this constitutional restriction. Clare et al. v. The People, 9 Colo. 122; Golden Canal Co. v. Bright, 8 Colo. 144; Edwards v. The D. & R. G. R. R. Co., 13 Colo. 59.
It is next insisted the complaint does not state facts sufficient to constitute a cause of action because it fails to set up the pecuniary damage which the father sustained in the loss of his son. It is not easy to understand precisely what this proposition includes. The law unquestionably is no damages are recoverable in suits of this description, except such as come within the general phrase of compensatory relief. What must be alleged in order to show the plaintiff entitled to recover general damages only, when he brings suit under the act, was very clearly settled by a somewhat recent deei *325 sion of the supreme court. Orman et al. v. Mannix, 17 Colo. 564.
The court there decided it was a sufficient statement of pecuniary injury to set up the relationship of the parties, the age of the deceased, his occupation, his earnings and the circumstances of his death, concluding with a general averment of damage. Under this rule, the present complaint does state a cause of action and lacks no allegation, save one relating to the wages which the deceased was earning at the time of his death. The company demurred to the complaint and when the demurrer was overruled, answered over and went to trial. The plaintiff proved the wages which William received as a miner at the time of his death. No objection was interposed to the introduction of the testimony, so that the verdict is aided by the proof. If the complaint be technically inaccurate in the omission of the allegation concerning the wages, the defect does not justify a reversal, since the proof supplied what the pleading lacked.
When the plaintiff’s evidence was in, the company moved for a nonsuit, which was denied, and the case then went to the jury. Error is assigned on the order overruling the motion. We shall not attempt to analyze and refute all the various propositions put forward by counsel in support of their contention that the motion should have been granted. The argument starts rvith the suggestions that all which an emplojmr undertakes to do is to provide a reasonably safe place to carry on the work to which the emplojme is put; that a servant assumes all the ordinary risks incident to his employment, should know its dangers, and has the burden to prove he did not assume the particular risk which occasioned the injury complained of. When the facts surrounding this case are recalled, this would almost seem like an attempted perversion of good law to bad uses. The survivor testified lie knew the bulkhead was in the shaft at the bottom of the dirt. Presumptively it was there to the knowledge of all the men who worked in the shaft. Every miner would be presumed to know a bulkhead had been put in the shaft to hold *326 the dirt which was being taken from the bench, for no man who ever worked in a mine imagined that a column of earth seventy-five feet long could be supported in a shaft above its bottom otherwise than by a bulkhead. When the company removed the bulkhead and ran water through the dirt, and then permitted the shift to go to its labors, they not only did not provide a reasonably safe place in which the employee might work, but furnished one as unsafe as would be the stringers of a bridge thrown over a chasm for a railroad train after the framework had been removed. To assert that an employee assumes the risks of his employment, and attempt to apply that doctrine to the present case, disturbs our judicial equanimity. Not only is it not a risk voluntarily assumed by the employee, but it might well be conclusively presumed to be a risk which no miner would knowingly take. When'it is insisted that a plaintiff must aver and prove he was not guilty of negligence, it is a statement of law without application to the present record. The case showed the putting in of a bulkhead amply sufficient to support the dirt. The work resulted in filling up the shaft some seventy-five or eighty feet, and for all practical mining purposes, while the bulkhead remained, it was as safe a place to labor as the surface of the earth. When once these facts were established, the plaintiff had proved that the decedent was guilty of no negligence in going to his labor. The law does not compel proof of any improbable or useless fact. It is impossible for the plaintiff to show that William Sharp did not know the bulkhead was removed, but the law does permit us to indulge in the presumption that he was without such knowledge, for no man possessed of his five senses would enter a death trap like that to which this shift was sent.
There are only two other matters which are worthy of consideration. It is urged with great vigor that the plaintiff may not recover, since he failed to show any absolute pecuniary loss through the death of his son. The limits of the argument are not quite apparent. The relief to which the plaintiff is entitled in cases of this description has been thor* *327 oughly settled in many decisions in our own state. Moffat v. Tenney, 17 Colo. 189; Hayes et al. v. Williams, 17 Colo. 465; Denver, S. P. & P. R. R. Co. v. Wilson, 12 Colo. 20; Pierce v. Conners, 20 Colo. 178.
It is always described as compensatory, and never as a solace for wounded feelings. It is, however, exceedingly clear that while it is permitted to give testimony concerning the relations of the deceased to the plaintiff, in order to form a just estimate of the probable damage, yet the recovery is not to be measured or determined by the extent of the contributions or support furnished by the one to the other. In other words, although the deceased as a son may never yet have contributed to the support of his father, yet when the son’s age, habits, earning capacity, and the age of the father are once established, a recovery may be had for the probable injury which the father has sustained in the loss of his son. That this is true is evident from the affirmance of judgments which have been entered in favor of parents for the killing of minor children of tender years, who at the time of the death have contributed nothing to the parents’ support, but, on the other hand, have been a constant expense and care. These same cases likewise sometimes show the parents were not in indigent circumstances, nor in absolute need of aid from their children. Yet a recovery was permitted on the hypothesis that there was a probable prospective damage which the parents or relatives had sustained, and for which they were entitled to maintain suits. There was nothing in this case to show the son had ever contributed to the support of his father, and yet the relationship and their relative ages and habits were of the description which warrants a recovery for the possible injury. There was some evidence of an arrangement between them with reference to an advancement. This evidence was objected to and withdrawn by the plaintiff’s counsel. The objection was not well taken. The evidence was entirely admissible, and had it been given to the jury, would have furnished the basis for a much larger recovery than was had. The other matter presented is, based *328 on the instructions which the court gave to the jury. It would serve no useful purpose to set them out and dispose of the various objections urged. There was no evidence put in, except what the plaintiff offered, and the case did not call for any extended statement. The court stated generally and aptly the law with respect to such matters, and the only particular in which the instructions did not coincide with most of the cases concerns its expression of the rule that the employer is bound to provide a reasonably safe place for his servant to work in. It is insisted the court should have defined what a safe place was, that the jury therefrom might be able to determine whether or not the company had discharged its duty in this particular. We do not so conceive. It was enough to tell the jury the company were bound to provide a reasonably safe place. The evidence about the place provided enabled them to determine that the employer had violated this rule, even though they were without a definition of what a safe place was. Their own knowledge of affairs would readily enable them to conclude the company had failed of its duty in this particular. In fact, we believe the court might have safely and wisely gone farther, and charged the jury directly, as a matter of law, that the company did not in this instance provide a safe place.
No other matters are discussed or presented which seem to us to require consideration. The judgment is amply justified by the record, the court committed no errors in the trial of the cause, and the judgment will accordingly be affirmed.

Affirmed.