[No. 5779.]

MILLER v. CAMP BIRD, LIMITED.

1. **Master and Servant — Servant's Assumption of Risk —** The servant assumes only such risks as are obvious to a person of ordinary intelligence, ability and experience, and which arise out of the conditions which surround him at the time. —(577)

Plaintiff and one Dalra were engaged in planking an ore chute. Dalra, selecting an ax which was somewhat battered and rounded, started to drive a spike into a plank immediately beneath where plaintiff was standing. Two attempts resulted in failure, the spike bounding away in each instance, but not toward plaintiff. Dalra, irritated by his repeated failures, struck the third time with his whole force, and the spike flew into plaintiff's eye. Plaintiff's face, at the time, was about six feet above where Dalra was attempting to drive the spike. Held impossible to say that, as a matter of law, plaintiff had assumed the risk of injury from the last attempt; that the question must be left to the jury.—(575-577)

2. **Employer's Liability—Notice of Injury—**An attorney on behalf of an injured servant, and as such attorney, addressed a letter to the resident manager of the employer, stating the time

and place of the injury, and referring to a letter of the physician attending the servant which he enclosed. The letter of the physician stated: "He was injured in the left eye on Nov. 14, 1902, in Camp Bird Mine. The eye was ruptured by the blow he received." It appeared that there was no intention to deceive or mislead, and that the employer was not in fact misled. Held, that the notice was a compliance with the requirements of the Employers' Liability act of April 8, 1893 (Laws 1893, 129, sec. 2).—(577-582)

Where the notice is inaccurate or defective in its statements, more attention should be given to the question whether it was intended to mislead, and did mislead, than to its contents.—(580)

The question as to the intent of the servant in framing the notice, and of the effect upon the master of defects or inaccuracies in the notice, is for the jury.—(582)

3. Master and Servant—Master's Liability for Medical Attendance—Assurances given to the servant at the time of his employment that in case of sickness or injury he will be received into a hospital maintained by the employer, and receive board, bed, medicines and medical attendance free, does not entitle the servant to recover the expense of a trip to a distant city, and moneys expended there for the services of a specialist, although this was upon the advice of the physician in charge of the hospital. The employer is not even bound to provide a specialist at the hospital.—(583)

*Error to Denver District Court*—Hon. FRANK T. JOHNSON, Judge.

Mr. B. E. WOODWARD, and Mr. LUCIUS W. HOYT, for plaintiff in error.

Messrs. THOMAS, BRYANT & MALBURN, Messrs. GOUDY & TWITCHELL, and Mr. C. H. REDMOND, for defendant in error.

Mr. JUSTICE MUSSER delivered the opinion of the court:

The plaintiff in error, who was plaintiff below, began work for the defendant in the Camp Bird mine on November 11, 1902. The first day he carried plank into the mine; the next day he was engaged

in putting timbers overhead in a tunnel; the third day he sawed plank in the tunnel, and helped to elevate the plank, after being sawed, to a stope; on the fourth day, the 14th day of November, he was engaged as a helper with one Dalra in planking an ore chute. The planks were nailed to stulls, which were about six feet apart. Dalra stood on the stull to which he nailed the lower ends of the planks, and the plaintiff stood on the next stull above, nailing the upper ends of the planks. They had two single jacks and two axes. A single jack is a double-headed hammer, the heads being flat instead of round. The axes were the ordinary axes used in chopping, except that the handles were about two feet long. Dalra would first nail the lower end of a plank, and then the plaintiff would nail the upper end. Dalra used an ax or a single jack, alternately. They thus continued until about quitting time. About that time, Dalra watched the plaintiff drive a nail into the upper end of the plank, and offered to drive one for the plaintiff. The plaintiff assented, and handed Dalra a single jack, but Dalra took an ax instead. Dalra started a spike into the plank just beneath where plaintiff stood, and attempted to drive it through the plank into the stull, but it bounded. Dalra started another spike, and it bounded. He started a third one, uttered an angry exclamation, drew back to gain greater force, and attempted to drive the spike with a violent blow; or as the plaintiff described it, "Dalra drew back and used his whole force." The spike was struck in such a manner, and with such violence, that it was driven upwards swiftly, and struck the plaintiff in the eye. At that time, plaintiff's head was about six feet above the point where Dalra attempted to drive the spike. The plaintiff's eye was very much injured, and had to be removed. The planks used were somewhat

knotty, although there is no evidence that Dalra was attempting to drive the spike through a knot. When Dalra started to drive the spike that struck plaintiff, the plaintiff told him to ''look out or you'll get hurt.'' Several times before that, during the afternoon, the spikes which Dalra was attempting to drive in the lower end of the plank bounded away, and once or twice the plaintiff warned Dalra to be careful, or he would hurt himself. While Dalra was driving the spikes in the lower end of the planks, his body was between the spikes and the plaintiff. The ax used by Dalra to drive the spike that struck plaintiff was an old one, somewhat battered and rounded. When plaintiff was employed by the defendant, he was told that the wages would be $3.00 a day; that the company had a hospital at Ouray, near where the mine is located, with first-class physicians, and that plaintiff could have the use of the hospital, with board, bed, medicine and physicians. The plaintiff's testimony leaves the impression that he was to receive those things, ''in case I got sick with a fever or something that way.'' Later on the plaintiff received his pay for the four days he had worked in the mine, less $1.00 deducted for hospital fees. After the accident, plaintiff was taken to the hospital at Ouray, where he remained for sixteen days, during which time he was waited upon by the physician in charge, and cared for by the Sisters who conducted the hospital. He then asked the physician if he had better go to an oculist; the physician said it would be better, and gave him the names of several oculists in Denver and wrote a note to one of them. The plaintiff went to the oculist to whom the note was directed. This oculist treated the eye for several days and then caused it to be removed. The plaintiff paid the oculist about $232.50 for services, and

he also paid $14.30 for railroad fare from Ouray to Denver.

Plaintiff brought this action, setting forth in his complaint two causes of action. In the first, he seeks to recover under the Employers' Liability act of 1901, for injuries sustained in consequence of the negligence of a co-employee. The act provides that an employer shall be liable in damages for injuries which may result to an employee from the carelessness or negligence of another employee, in the same manner, and to the same extent, as if the carelessness or negligence causing the injury was that of the employer. After stating that Dalra was engaged with him in constructing an ore chute, and that it was the duty of Dalra to provide himself with, and to use reasonably proper, safe and sufficient tools with ordinary care, the complaint alleges: "That notwithstanding his duty, said Dalra did negligently omit to provide himself with, and to use, reasonably proper, safe and sufficient tools, with ordinary care, in and about the doing of said work, and contrary to his said duty, did negligently provide himself with, and use, improper, unsafe and insufficient tools, with such lack of ordinary care as to cause a nail, which he was attempting to drive into said lumber with an axe, to bound and fly therefrom, and strike plaintiff in the left eye."

In the second cause of action, the plaintiff alleges that, as a part of the contract of employment between himself and defendant, it was agreed, in consideration of the sum of $1.00 a month, to be deducted by the defendant from such wages as might from time to time accrue to plaintiff, that the defendant would provide the plaintiff with such medical and hospital treatment as might become necessary or proper, in the treatment of any injuries that plaintiff received while so employed, and that during

the time of such treatment the defendant would keep, care for and maintain the plaintiff; that the plaintiff was injured on the 14th day of November, 1902, while working for the defendant, by reason whereof medical and hospital services and treatment became, for a long time, necessary and proper; that the defendant was requested to provide the plaintiff with such medical and hospital services and treatment, which it failed to do, and likewise failed and refused to board, keep, care for and maintain plaintiff during the time that medical and hospital services and treatment were needed and proper, and further sets out the expenditure of $232.50 for hospital and medical services, and $14.30 for railroad fare, and $100.00 for board, care and maintenance; all of which he seeks to recover. At the close of plaintiff's case, the defendant asked the court to direct the jury to return a verdict in its favor, as to both causes of action. The motion was granted by the court, and the verdict directed. The plaintiff duly excepted to the direction of the verdict by the court, and also duly excepted to the verdict as rendered pursuant to the direction. The plaintiff now seeks to have the action of the court in directing the verdict reviewed.

But two questions, relative to the first cause of action, are submitted for consideration.

1. Did the case, as made by plaintiff, show that he assumed the risk of the injury?

The defendant contends that it does. The lower court did, and for that reason directed the verdict.

2. Was notice given to the defendant of the time, place and cause of the injury, if such notice is required by the act of 1901?

Under the allegations of the complaint, the negligence of the co-employee consisted of two acts.

1. In negligently providing himself with improper, unsafe and insufficient tools.

2. With negligently using improper, unsafe and insufficient tools with lack of ordinary care.

To provide one's self with tools is one thing; to use those tools is another thing. One may select improper, unsafe and insufficient tools, and yet use those tools, under the circumstances, with such ordinary care that no injury may result; on the other hand, he may select such tools and use them with such lack of ordinary care as to cause injury. To assume the risk of working with a co-employee, who has selected improper, unsafe and insufficient tools is one thing, while to assume the risk of working with a co-employee, who uses improper, unsafe and insufficient tools with a lack of ordinary care, is another thing. If it be granted, for argument's sake, (but not decided) that Dalra had provided himself with improper, unsafe, and insufficient tools, and that the plaintiff had assumed the risk of working with him, with such tools, that is not granting that the plaintiff assumed the risk of Dalra's using those tools with lack of ordinary care. The evidence in the case shows that Dalra, in an angry manner, suddenly drew back, and, with his whole force, struck the spike, which caused the injury to plaintiff. He did not do so before. His use of the tools before that did not arouse in plaintiff any apprehension of danger to anyone but Dalra himself. True, the spikes frequently bounded before that, but it does not appear that they bounded in the direction of, nor as far as plaintiff. Even the bounding of the two spikes at plaintiff's end of the plank, immediately preceding the bounding of the one that struck his eye, does not appear to indicate that plaintiff was in any apparent danger, at the distance he was away, if Dalra continued to endeavor to start the spikes as he had been doing, or if he would use ordinary care in so doing. Up to the time that Dalra struck the last spike, he

so used the tools he had, and the plaintiff was so situated, that the latter's danger was not so apparent or obvious as to warrant a court in saying, that, as a matter of law, the plaintiff had assumed any risk. The most that can be said is that there was possible danger that Dalra would so attempt to start a spike that it would be driven with such force, and to such a distance, as to injure plaintiff. It is not the possible dangers or risks that are assumed in any case, but only such risks as are obvious to a person of ordinary intelligence, ability, and experience, and which arise out of the condition of affairs that surround the employee at the time.—*D. & R. G. R. R. Co. v. Sporleder,* 39 Colo. 142-147; Dresser's Employers' Liability, sec. 95—or the ordinary risks incident to the service for which he is employed.—*Orman v. Mannix,* 17 Colo. 564. From this record, it fairly appears that, in all probability, the accident would not have happened if Dalra had not attempted to drive the last spike in such a violent manner. It follows from this that the negligence, if there was any, and this is for the jury to determine from all the evidence, arose out of the manner in which it was attempted to drive the spike which struck plaintiff. Can it be said that the plaintiff should have anticipated such sudden and violent action on the part of Dalra? Was it obvious, and can it be said, under such circumstances, that the plaintiff had assumed the risk that Dalra would do that? To say that the plaintiff had assumed the risk of Dalra's attempting to drive that spike in such a violent manner would be carrying the doctrine of the assumption of risk to an unreasonable extent, and far beyond that to which its most favorable advocates have carried it. To hold that the plaintiff had assumed the risk of Dalra's violent attempt to drive that spike, if such attempt was negligence,

would be to nullify, to an extent, the statute of 1901; for then to every action for an injury, occasioned by the sudden and not to be expected negligence of a co-employee could be interposed the defense of the assumption of risk.    Before a man can assume the consequences of an action, it must be obvious that it will happen and the assumption be voluntary on his part.    Before an employee can assume a risk, it must be understood and appreciated by him, and the assumption must be voluntary in its character.—*Burgess v. Davis, Sulphur Ore Co.,* 165 Mass. 71-73.    In this case, the plaintiff did not know, nor can it be said, that he should have anticipated or understood or appreciated, or that it was obvious, that Dalra was going to do what he did do, nor did he have any time to guard himself against such action on Dalra's part.    It is plainly evident, therefore, that it cannot be held, as a matter of law, that the plaintiff had or even could have assumed the risk of such action.

In 1893, our general assembly passed an Employers' Liability Act, which provided that before an action can be maintained under it, a written notice of the time, place and cause of the injury must be given to the employer within sixty days.    The act of 1901 is an independent act and is silent as to notice.    The defendant contends that the language of sec. 2 of the act of 1901 makes the provisions of the former act, relative to notice, a part of the latter one. It need not be determined whether a notice is or is not necessary under the act of 1901, for the reason that the provisions of the act of 1893, relative to notice, were substantially complied with in this case. On December 19, 1902, the attorney for plaintiff, as such attorney and on behalf of the plaintiff, addressed and mailed a letter to the resident manager of the defendant, wherein was stated the time and place of the injury, for which compensation was

asked. In this letter, the attorney referred to another letter from the plaintiff's physician as enclosed. The physician's letter was enclosed. It was addressed to the manager. In the letter of the physician, it was said: "He (the plaintiff) was injured in the left eye on Nov. 14, 1902, in Camp Bird mine. The left eye was ruptured by the blow he received, etc." The cause is here stated, "the blow he received," and by reference became a part of the attorney's letter. It cannot be said that no cause was stated. It was a meager statement, but it was not an entire failure to state the cause. The section of the act of 1893, providing for notice, says: "But no notice, given under the provisions of this section, shall be deemed invalid or insufficient, solely by reason of any inaccuracy in stating the time, place or cause of the injury: *Provided* it is shown there was no intention to mislead, and that the party entitled to notice was not in fact misled thereby." But for the provision of our statute above quoted, the notice given by the attorney's letter would be clearly insufficient, under the decision in *Stoors v. The City of Denver,* 19 Col. App. 159. In that case the charter provision, under which the notice was given, did not contain any provision to save a notice against omissions, defects or inaccuracies, and therefore, the decision is not applicable here. The English Employers' Liability act of 1880 provided for the giving of notice before an action can be maintained. Sec. 7 provided that the notice shall give the name and address of the person injured, the cause of the injury in ordinary language, and the date it was sustained, and further provided that a notice "shall not be deemed invalid by reason of any defect or inaccuracy therein," unless the trial judge shall be of the opinion that the defendant is prejudiced thereby, and that the defect or inaccuracy was for the purpose of misleading.—Note to *Carter*

*v. Drysdale,* 12 Q. B. Div. 91. In that case, the omission of the date of the injury from the notice was held to be a defect or inaccuracy within the meaning of sec. 7. In *Stone v. Hyde,* 9 Q. B. Div. 76, the notice stated the date of the injury, and that plaintiff was at a hospital, for an injury to his leg, and gave no further suggestion of the cause. The court held that the notice, although defective in stating the cause, was still a notice, and as there was no evidence that the defendant was prejudiced thereby, the nonsuit was set aside. In *Thompson v. Robertson & Co.,* 12 Rettie's Rep. 121, a letter was written by plaintiff's wife to the defendants, in which she said she needed money; that it was "five weeks since Adam got his accident. His jaw is so badly smashed that he will never be the same man again"; that Adam had been advised to get damages, and as another man got some money, she could not see why Adam should not get some too. The court said that this letter gave notice to the defendants that the plaintiff was seriously hurt in their employment, and had been advised to claim damages. The only objection to the letter, as a notice, was its failure to state the cause of the injury. The court thought this objection too critical, and that under the provisions of sec. 7, the only question was, whether the alleged inaccuracy in the notice prejudiced the defendant. In *Previdi v. Gatti,* 50 L. T. 762, the notice omitted to give the address of the person injured, or to state the cause, and the date of the injury was wrongly given. The trial judge found that the defendants had not been prejudiced by the defects and inaccuracies in the notice, and they were not for the purpose of misleading, and the court on appeal held that this finding rendered the notice good. Some of the judges in these English cases said that the notice is supposed to be given by a person not possessed of

such knowledge, and if it be construed with rigorous strictness, the act would be nugatory. The same can be said with regard to the notice required by our statute. The applicability here, of these cases, lies in the fact that they afford an admonition that under our statute more heed should be given, in case of an inaccurate notice, to the question whether such notice is intended to mislead and did in fact mislead, than to the contents of the notice itself, and it is with this admonition in mind that an application of our statute to a given notice is approached.

In Massachusetts, before an action could be determined against a city or town for damages for an injury in a highway, the statute provided that notice of the time, place and cause of the injury should be given. In 1882, the statute was amended by adding a provision concerning inaccuracy, and this provision is almost word for word the same as the provision in our statute of 1893, quoted above.—Note 2, *Fortin v. Easthampton,* 142 Mass. 486.

In *Gardner v. Weymouth,* 155 Mass. 595, in construing this amendment, the court said that it would be too strict a construction to hold that the amendment applies only to cases of misstatement. With this we are in accord. The court then proceeds to say that the amendment can have no application at all where there is a total omission to state either all or any of the requirements of time, place or cause. This does not appear to be in harmony with the decisions of the English courts. The court then says: "If there is a statement of the kind required, which, as to the time, or the place, or the cause of the injury, is inaccurate, whether from falsity or deficiency, whether through omission or error, the plaintiff may still recover if there was no intention to mislead, and if the inaccuracy did not in fact mislead." This holds that the inaccuracy may consist of a falsity,

deficiency, error or omission, and puts the final test of the sufficiency of the notice upon the question, whether or not the inaccuracy was intended to.mislead and did in fact mislead. This is in harmony with the English decisions, and in the cases which have gone forward the practical results have been virtually the same, although the Massachusetts court appears to hold that the omission must fall short of a total omission to state any of the three requirements.

In *Fortin v. Easthampton, supra,* the notice read as follows, and was held sufficient:

"Since falling on the sidewalk in front of the Button shop, Feb. 25th last, I have been unable to work, and am now under the doctor's care, and I hereby notify you to that effect. I request a settlement in some way. Please attend to the matter at once."

The defendant argued that there was a total failure to state. any cause and that a total omission cannot be called an inaccuracy. In reply to this contention, Mr. Justice Holmes said:

"But a majority of the court are of the opinion, that the argument, as applied to this case, construes the statute too narrowly. When a man states that he was hurt by falling on a sidewalk, and that he demands damages for it, he does imply, although indirectly and insufficiently, that there was something for which the town was responsible as the cause of the damage, and thus that there was something wrong about the way. And this is true, even though the reference to falling is, primarily at least, only for the purpose of fixing a time. It is hard to suppose that the statute intends to cure.a misstatement of the cause, which, on the face of things, is more likely to mislead than no statement at all, and yet to allow a simple omission to remain fatal. However this may

be; a very slight suggestion of the cause will be sufficient when the conditions of the statute are complied with.''

See, also:   *Canterbury v. Boston,* 141 Mass. 215; *Liffin v. Beverly,* 145 Mass. 549; *Veno v. Waltham,* 158 Mass. 279; *Conners v. Lowell,* 158 Mass. 336; *Fuller v. Hyde Park,* 162 Mass. 51; *Carberry v. Sharon,* 166 Mass. 32.

Without determining whether or not a notice which entirely fails to state any one of the three requirements, would be sufficient, bearing in mind the admonition afforded by the English decisions, and the holding of the Massachusetts court that a very slight suggestion of the cause is sufficient, it appears that in the present case the suggestion of a cause in the attorney's letter is sufficient, if it was not thereby intended to mislead the defendant, and the defendant was not in fact misled thereby.   From the Massachusetts authorities cited above, it appears that this question of whether the inaccuracy is intended to mislead and did in fact mislead, is one for the jury, under a statute like ours, the same as other facts are to be determined by a jury.   If we investigate this matter in this record, we find that on December 22, 1902, defendant's attorneys wrote a letter to plaintiff's attorney, saying that the manager had handed to defendant's attorneys, for reply, the letter of December 19th, and that from the investigation, which the company had made, there seemed to be no liability on its part.   The letter further stated that the defendant was carrying liability insurance, and suggested that plaintiff's attorney take the matter up with the attorneys for the insurance company, who had knowledge of all the facts.   After the receipt of the letter of December. 22d, plaintiff's attorney delivered to the attorneys for the insurance company an affidavit of plaintiff, stating, in detail, the

time, place and cause of the injury. This affidavit was dated December 27th. It does not clearly appear when it was delivered, although it seems to be accepted that it was delivered within the sixty days in which notice must be given under the statute. From all this, it plainly appears thus far in the record, that there was no intention to mislead the defendant by the statement of the cause, as made, and that the defendant was not in fact misled thereby.

It is suggested in the brief that the affidavit delivered to the attorneys, for the insurance company, was a notice to the defendant, because delivered to the persons designated to represent the defendant in the whole matter of plaintiff's claim and that notice was waived by the acts of defendant. There may be force to these suggestions, but as it is not now necessary, they will not be determined.

So far as the second cause of action is concerned, it cannot, in reason, be maintained that if the defendant contracted at all, that it contracted to do more than to furnish such reasonable care as the hospital at Ouray afforded. Such hospitals are not equipped with all kinds of specialists. The plaintiff will certainly not maintain that if it became necessary for his proper treatment, that he consult an eminent specialist in New York, that the company was bound to furnish such specialist, either at the hospital at Ouray, or in New York. It is likewise too much to say that the company was bound to furnish a specialist either at the hospital or in Denver. The company furnished such care as the hospital in Ouray afforded and as could be reasonably expected —at least no complaint was made of it. This is all that can be required. The plaintiff has alleged expenses for medical services and care, and loss of time in his first cause of action. If he recovers in this, he

will no doubt receive such compensation for these expenses as he may show himself entitled to.

For the reasons above stated, the direction of the verdict was wrong as to the first cause of action and right as to the second.

The judgment of the district court will, therefore, be reversed and the cause remanded for such further proceedings on the first cause of action as may be in accordance with law.

*Reversed and remanded.*

CHIEF JUSTICE STEELE and Mr. JUSTICE CAMPBELL concur.